■ CHERNOFF DIAMOND & Co., Respondent, v FITZMAURICE, INC., et al., Appellants. [651 NYS2d 504] —Order, Supreme Court, New York County (Herman Cahn, J.), entered July 10, 1996, which, *inter alia*, preliminarily enjoined defendants from soliciting or assisting any of plaintiff's clients in competition with plaintiff until July 15, 1998, unanimously affirmed, without costs.

Defendants Fitzmaurice and his corporate alter ego, Fitzmaurice, Inc. (hereinafter, collectively, "defendant"), were hired by plaintiff insurance agency in 1988 to head its "Group Health Department". In 1991, defendant became a partner, and, in 1995, the parties executed a memorandum of understanding which, in pertinent part, provided that, upon withdrawal from the firm, which would be effective 60 days after notice thereof, defendant could conduct business in competition with the firm, but for two years would not: "(i) solicit, join, provide services to, advise, give assistance to, or contact any person or entity who was a client of the firm or any employee of such person or entity with respect to the provision of Competing Services."

On May 16, 1996, defendant tendered 60 day notice of his resignation as an employee and partner of plaintiff. Over the next several days, defendant contacted a number of plaintiff's clients and informed them that he was starting his own agency. One of those clients, the law firm of Cahill, Gordon & Reindel, terminated plaintiff's services and engaged defendant as its agent upon his assurance that "he would personally devote as much attention as was necessary to effect [its] renewal [of policies] and to aggressively negotiate the terms thereof as he had in the past". On May 22, 1996, plaintiff accepted defendant's resignation, effective July 16, requested a return of various items of property, including "customer lists, rolodex, records, referrals, and financial and business information" and changed the locks on defendant's offices. Defendant's attorney immediately advised plaintiff that defendant construed this as a constructive discharge. Plaintiff's counsel responded that there had been no discharge, that defendant's status as a partner continued for the specified 60 day period and that he was expected to assist in the transition. Shortly thereafter, plaintiff commenced the instant action seeking to prohibit defendant from soliciting its clients for two years and otherwise breaching their agreement.

Generally, a preliminary injunction will be granted only where the movant shows a likelihood of success on the merits, the potential for irreparable injury if the injunction is not granted and a balance of equities in the movant's favor (*Grant Co. v Srogi*, 52 NY2d 496, 517; *McLaughlin, Piven, Vogel v Nolan & Co.*, 114 AD2d 165, 172, *lv denied* 67 NY2d 606).

In arguing that plaintiff was not likely to succeed on the merits and, would, therefore, not be entitled to an injunction, defendant emphasized that restrictive covenants relating to employment are not favored, and will be deemed unenforce-

able unless reasonable in scope, duration and geographical area (*Columbia Ribbon & Carbon Mfg. Co. v A-1-A Corp.*, 42 NY2d 496, 499) and either necessary to protect the employer from unfair competition that stems from the employee's use or disclosure of trade secrets or confidential customer lists (*Reed, Roberts Assocs. v Strauman*, 40 NY2d 303, 308), or related to an employee whose services are unique or extraordinary (*Purchasing Assocs. v Weitz*, 13 NY2d 267, 272, 274; *Columbia Ribbon & Carbon Mfg. Co. v A-1-A Corp., supra*), and that such were not here present.

The IAS Court held to the contrary and found that, upon applying the relevant standards, plaintiff is likely to succeed on the merits and granted the preliminary injunction here in issue, which provides that defendant may not "solicit, join, provide services to, advise [or] give services to, any person or entity who was a client of Chernoff Diamond or any employee of such person or entity with respect to the provision of Competing Services".

Initially, it is significant that the clause in question was part of an agreement that was entered into by the parties, after extensive negotiations in which defendant was represented by counsel (*see, Maltby v Harlow Meyer Savage*, 223 AD2d 516, *lv dismissed* 88 NY2d 874). Moreover, neither the duration of the restriction, i.e., two years, nor its scope is unduly burdensome. The covenant does not prohibit defendant from pursuing his profession (*cf., Maltby v Harlow Meyer Savage, supra*) or limit him geographically (*see, Contempo Communications v MJM Creative Servs.*, 182 AD2d 351, 353). Indeed, the only restriction imposed upon him is that he is not permitted to deal with plaintiff's clients. There is no reason to suppose that this limitation will prevent defendant from pursuing his livelihood or that it will have the effect of precluding him from operating a successful insurance agency.

Although, within the context of this case, the restriction imposed is relatively limited in scope, we are mindful that even such a limited restriction on defendant's right to pursue his livelihood should not be enforced if it is not necessary to protect the employer's "legitimate interests" (*Reed, Roberts Assocs. v Strauman, supra*, 40 NY2d, at 307). In this regard, the issue is not only whether plaintiff's client list was confidential (which it apparently was, but only in part) but also whether defendant obtained, while in plaintiff's employ, invaluable and otherwise unobtainable information concerning the business practices and resulting insurance needs of these clients due to his position as their trusted professional advisor.

Defendant's attempt to minimize the information so gained is not only unpersuasive but also mischaracterizes the nature of the services involved.

Under these circumstances, we find that plaintiff sufficiently demonstrated its likelihood of success on the merits. It was also clearly shown that plaintiff would suffer irreparable harm should its clients terminate their relationships with it in order to use defendant's services, and, considering that the restriction was freely bargained for as part of a negotiated contract, it cannot be said that the equities favor defendant.

Finally, we note that, the facts herein make it clear that there was no constructive discharge, which occurs "only when an employer ' "deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation" ' " (*Fischer v KPMG Peat Marwick*, 195 AD2d 222, 225, quoting *Pena v Brattleboro Retreat*, 702 F2d 322, 325). Concur—Rosenberger, J. P., Ellerin, Ross, Nardelli and Mazzarelli, JJ.