[869 NYS2d 465]

ASHLAND MANAGEMENT INCORPORATED, Respondent-Appellant, v
ALTAIR INVESTMENTS NA, LLC, et al., Appellants-
Respondents.

First Department, December 23, 2008

## APPEARANCES OF COUNSEL

*Gordon & Haffner, LLP*, Harrison (*David Gordon* and *Steven R. Haffner* of counsel), for appellants-respondents.

*Grayson & Associates, P.C.*, Greenwich, Connecticut (*Eric D. Grayson* of counsel), for respondent-appellant.

### OPINION OF THE COURT

ACOSTA, J.P.

The primary issues in this case involve the denial of defendants' motion for summary judgment dismissing the complaint, which alleges, among other things, defendants' blatant theft of confidential information in violation of confidentiality agreements as well as breach of fiduciary duties. Thus, contrary to the dissent, which focuses primarily on defendants' version of events, this Court is constrained to view the evidence in the light most favorable to the party opposing summary judgment (*Toure v Avis Rent A Car Sys.*, 98 NY2d 345, 353 [2002]). It is in this context that we highlight plaintiff's claims, which have been established with evidence in admissible form, and which the motion court found sufficient to defeat defendants' motion (*Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]).

Plaintiff is in the business of providing investment advice and management to high net worth individuals and entities. Defendant Jones, the son of one of plaintiff's cofounders, worked for plaintiff for 17 years until he resigned in August 2003 to form Altair with defendant Obuchowski. At the time of his resignation, Jones was a managing director, portfolio manager and member of plaintiff's Investment Advisory Committee. Obuchowski was hired by plaintiff in January 2002 on Jones's recommendation as vice-president for quantitative research.

In December 2000, Jones entered into an employee confidentiality agreement with plaintiff, which provided in relevant part that the employee

"will not, at any time during or after the termination of his or her employment by the Company for any reason whatsoever, use for any purpose other than the performance of his or her duties with the Company, reveal, divulge or make known to any person (other than the Company) any records, data, trade secrets, know-how, methods of operations, strategies, processes, computer programs, personnel information . . . or any other confidential or proprietary information of the Company or any Client whatever (the 'Confidential Information') used by the Company and made known (whether or not with the knowledge or permission of the Company, and whether or not developed, devised or otherwise created in whole or in part by the efforts of the Employee) to the Employee by reason of his or her employment by the company. The Employee further covenants and agrees that he or she shall retain all such knowledge and information which he or she shall acquire or develop respecting such Confidential Information in trust for the sole benefit of the Company and its successors and assigns. Upon termination of his or her employment with the Company, the Employee will deliver to the Company any and all copies of any Confidential Information which is in the possession or under control of the Employee and *shall not, directly or indirectly, copy, take, or remove from the premises of the Company, any of the books or records, client lists or client information or any other documents of the Company including, without limitation, those which incorporate any Confidential Information*" (emphasis added).

Obuchowski entered into a substantially similar confidentiality agreement.

Prior to January 2003, and while still employed by plaintiff, Jones and Obuchowski started planning Altair, and on January 15, 2003, the domain name Altairinvestments.com was registered to Obuchowski. Then, in the summer of 2003, while still in plaintiff's employ, Jones and Obuchowski prepared and distributed to plaintiff's clients a commentary on investment performance for the second quarter of 2003 and their forecast for the third quarter. This was done on plaintiff's letterhead without its Investment Advisory Committee's approval and in

breach of company policies. Obuchowski misstated his title on the commentary as "Director of Research," rather than vice-president for quantitative research. According to plaintiff, these actions were in violation of defendants' fiduciary duty and confidentiality agreements, and designed to increase their visibility to plaintiff's clients immediately prior to their resignation so that they would be more likely to attract those clients.

Plaintiff also asserts that in a further effort to cause it damage and take its clients, defendants contacted plaintiff's clients to advise them that defendants would be leaving plaintiff's employ even though it was plaintiff's contractual obligation to notify its clients of changes to its Investment Advisory Committee. Plaintiff was not only blindsided by angry clients who were upset that plaintiff had failed to notify them of Jones's departure, but defendants' actions also damaged its relationship with at least three clients.

Less than a week after defendants resigned from plaintiff, Altair was officially formed on August 21, 2003. Then, on at least 40 occasions, Altair, without plaintiff's knowledge, used plaintiff's Federal Express account to send packages of information to plaintiff's clients, which plaintiff asserts was for the purpose of soliciting business from plaintiff's clients on behalf of Altair. In addition, Jones called plaintiff's clients to solicit their business.

According to plaintiff, defendants contacted plaintiff's clients using improperly obtained confidential information that could not have been readily ascertained from publicly available sources (such as the Internet as defendants had alleged), and that considerable money and effort had been expended in obtaining that information. Over the years, plaintiff had identified and developed relationships with certain individuals who were brokers, custodians, or consultants for specific types of investment accounts that comprised its clients. Indeed, as plaintiff notes, some Internet sites do not have addresses, some individuals are not listed on the sites, and, in some cases, defendants even stole the wrong address right out of plaintiff's files. Defendants also stole plaintiff's performance data, which they used in their solicitation materials sent to a client of plaintiff.

In January 2004, when plaintiff discovered that defendants had apparently hacked into plaintiff's computer and sent promotional materials to plaintiff's clients via Federal Express, it commenced an action against defendants (*Ashland I*) seeking

damages and injunctive relief. Finding that plaintiff had demonstrated a likelihood of success on the merits with respect to its claims for breach of fiduciary duty and breach of the confidentiality agreements, Supreme Court issued a preliminary injunction enjoining and restraining defendants from "(1) using, disseminating or exploiting information derived or copied from any of plaintiff's records, data, trade secrets, know-how, methods of operation, strategies, processes, computer programs, personnel information, client lists or client information and any other confidential or proprietary information" and "(2) soliciting any of the individual brokers, custodians or consultants of plaintiff's institutional clients that Jones and Obuchowski were either introduced to through their employee relationship with plaintiff or learned of from any of the Confidential Information."

The action was thereafter discontinued without prejudice while the parties attempted to resolve the dispute. The settlement discussions were unsuccessful, however, and the action was then recommenced in October 2005. In the current action, which demands compensatory and punitive damages as well as injunctive relief, plaintiff accuses Jones and Obuchowski of having, among other things, "combined and conspired to form a new investment advisory company . . . and to divert business away from plaintiff and misappropriate such business to Altair by stealing plaintiff's confidential information." The complaint asserts, in that regard, seven claims for, respectively, (1) a preliminary and permanent injunction that would direct defendants to "immediately cease and desist from any use, dissemination or exploitation of information derived or copied from any of plaintiff's records, data, trade secrets, know-how, methods of operation, strategies, processes, computer programs, personal information, client lists or client information and any other confidential or proprietary information," (2) and (3) both breach of fiduciary duty, (4) breach of contract (confidentiality agreements), (5) conversion, (6) tortious interference with contract, and (7) unfair competition as against Altair.

Defendants responded by moving for summary judgment dismissing the complaint, and plaintiff cross-moved for an order reinstating the preliminary injunction that it had been previously granted in *Ashland I*. By order dated September 26, 2006, Supreme Court granted defendants' motion only to the extent of dismissing plaintiff's fifth and sixth causes of action for conversion and tortious interference with contract, pointing out that plaintiff "did not oppose that part of defendants' motion,"

and denied the broad injunctive relief sought by plaintiff in its cross motion (2006 NY Slip Op 30532[U], *9). The court found that there "are issues of fact such that summary judgment is not appropriate at this time" (*id.*), and, concerning plaintiff's request for a preliminary injunction, stated that the "preliminary injunction from Ashland I dissolved automatically on June 9, 2005 when Ashland I was voluntarily discontinued by written stipulation. The discontinuance contained an agreement that [plaintiff] could recommence an action through an identical complaint if the parties did not resolve the matter," and under such stipulation, the preliminary injunction previously issued in *Ashland I* "was replaced with a narrower and more precisely defined agreement, which was limited in scope to certain individuals set forth in an annexed list" (*id.* at *2).

The motion court properly declined to dismiss the complaint in its entirety. Restrictive covenants, such as the confidentiality agreements herein, are subject to specific enforcement to the extent that they are " 'reasonable in time and area, necessary to protect the employer's legitimate interests, not harmful to the general public and not unreasonably burdensome to the employee' " (*BDO Seidman v Hirshberg*, 93 NY2d 382, 389 [1999], quoting *Reed, Roberts Assoc. v Strauman*, 40 NY2d 303, 307 [1976]). With respect to covenants aimed at protecting against misappropriation of an employer's trade secrets or confidential customer lists,

> "courts . . . recognize the legitimate interest an employer has in safeguarding that which has made his business successful and to protect himself against deliberate surreptitious commercial piracy. Thus, restrictive covenants will be enforceable to the extent necessary to prevent the disclosure or use of trade secrets or confidential customer information" (*Reed, Roberts Assoc.*, 40 NY2d at 308).

Whether a plaintiff's customer list and/or other proprietary information constitutes a trade secret or is readily ascertainable from public sources is ordinarily a triable issue of fact (*see Suburban Graphics Supply Corp. v Nagle*, 5 AD3d 663, 666 [2004]; *Bender Ins. Agency v Treiber Ins. Agency*, 283 AD2d 448, 450 [2001]; *Spectron Glass & Elecs. v Marianovsky*, 273 AD2d 374 [2000]).

Further, if the parties entered into a confidentiality agreement and the proprietary information at issue constitutes a trade secret, whether defendants' use of that information was a

result of casual memory is irrelevant (*see North Atl. Instruments, Inc. v Haber*, 188 F3d 38, 47 [2d Cir 1999], explaining *Leo Silfen, Inc. v Cream*, 29 NY2d 387 [1972], and quoting 4 Milgrim on Trade Secrets, App 15A-3 [1998] ["(T)he majority rule is . . . that appropriation by memory will be restrained under the same circumstances as will appropriation by written list"]).[1]

Here, the record establishes that the individual defendants took plaintiff's proprietary material and made use of it to further their own business interests in their new endeavor. Although defendants argue that their conduct did not violate the confidentiality agreements because the subject material was publicly available, plaintiff has presented evidence in admissible

---

1. The casual memory cases cited by the dissent (*Leo Silfen, Inc. v Cream*, 29 NY2d 387 [1972], *supra; Falco v Parry*, 6 AD3d 1138 [2004]; *Arnold K. Davis & Co. v Ludemann*, 160 AD2d 614 [1990]; *Levine v Bochner*, 132 AD2d 532 [1987]) are inapposite inasmuch as there were no express agreements in those cases. Thus, the courts' holdings in those cases that the lists at issue could have been ascertained by public sources are of no moment to this case where there are confidentiality agreements. As the court in *North Atlantic* explained:

"Numerous cases applying New York law have held that where . . . it would be difficult to duplicate a customer list because it reflected individual customer preferences, trade secret protection should apply . . .

*"Leo Silfen, Inc. v. Cream* does suggest that one factor in analyzing a trade secret claim against an employee who has solicited a former employer's customers is whether the solicitation was merely 'the product of casual memory.' 29 N.Y.2d at 391 . . . [W]e do not [, however,] read *Leo Silfen* to describe a broad rule dictating that anything an employee remembers casually is not a trade secret. Rather, *Leo Silfen* expressly notes that customer lists . . . in which customers are not readily ascertainable and in which patronage has been secured only through the expenditure of considerable time and money[ ] are protectable trade secrets. *See* 29 N.Y.2d at 392-93 . . . ; *accord Webcraft Techs.*, 674 F.Supp. at 1045; *cf.* 4 Roger M. Milgrim, Milgrim on Trade Secrets, App. 15A-3 (1998) . . . Moreover, *Leo Silfen* implies that its holding is limited to cases lacking an express confidentiality agreement protecting customer lists—a clear distinction from the instant case. *See* 29 N.Y.2d at 395" (188 F3d at 46-47 [footnote and some citations omitted]; *but see Columbia Ribbon & Carbon Mfg. Co. v A-1-A Corp.*, 42 NY2d 496, 499 [1977] [covenant unrestrained by any limitations keyed to uniqueness, trade secrets, confidentiality or even competitive unfairness is unenforceable]).

*Buhler v Maloney Consulting* (299 AD2d 190, 191 [2002]) does not dictate a different result inasmuch as the Court held that the list in question was not a trade secret but rather was "prepared by plaintiff based on her knowledge of the financial services industry and on information that was publicly available."

form showing that defendants targeted Altair's promotional materials to specific brokers, consultants and custodians, all of whom were plaintiff's clients, and that defendants only learned the identities of these individuals through their employment with plaintiff. Viewing the evidence in the light most favorable to the party opposing summary judgment (*People v Grasso*, 50 AD3d 535, 544 [2008]), it is for a jury to decide whether the targeted information was confidential or ascertainable through public records. Accordingly, defendants cannot demonstrate that they are entitled to dismissal of the complaint on the ground *that they did not, as a matter of* law, violate their confidentiality agreements with plaintiff by taking its trade secrets (*compare Fredric M. Reed & Co. v Irvine Realty Group*, 281 AD2d 352 [2001], *lv denied* 96 NY2d 720 [2001]).

Contrary to the dissent, the mere fact that the confidentiality agreements were not limited in duration does not necessarily make them ipso facto unenforceable. We find no legal support for the dissent's core position that the absence of a durational limitation renders a confidentiality agreement void as a matter of law in cases where the employee does not provide "unique or extraordinary" services. A restrictive covenant is unenforceable if its duration is unreasonable (*see e.g. Maxon v Franklin Traffic Serv.*, 261 AD2d 830, 832 [1999]) because of the " 'powerful considerations of public policy which militate against sanctioning the loss of a man's livelihood' " (*Reed, Roberts Assoc.*, 40 NY2d at 307, quoting *Purchasing Assoc. v Weitz*, 13 NY2d 267, 272 [1963]), as well as the general public policy favoring robust and uninhibited competition (*American Broadcasting Cos. v Wolf*, 52 NY2d 394, 404 [1981]). Protecting trade secrets and truly confidential information, however, does not have to be time limited in every instance where the covenant does not otherwise prevent a former employee from pursuing his or her livelihood or interfere with competition (6 Lord, Williston on Contracts § 13:5, at 291-292 [4th ed] ["basic test for determining permissible time . . . limitations is whether the restraint as to time . . . is necessary for the protection of the promisee, but neither oppressive on the promisor, nor injurious to the interests of the general public" (citing, inter alia, Restatement [Second] of Contracts § 188 [1] [a], [b])]; *cf. Karpinski v Ingrasci*, 28 NY2d 45, 50 [1971] [in enforcing *permanent* restraint on competition against oral surgeon in limited rural area, Court stated that "a covenant will not be stricken merely because it contains no time limit or is expressly made unlimited as to time" (internal quotation marks omitted)]).

Thus, although covenants restraining competition by a former employee whose services were "unique or extraordinary" are given wider latitude (*BDO Seidman*, 93 NY2d at 389-390), such as in *Karpinski*, the reasonableness of the duration of a covenant of a nonunique employee nonetheless necessarily depends on the circumstances. Otherwise, the rule would not be stated in terms of reasonableness, but rather by a fixed durational requirement.[2]

In the present case, there is "no reason to suppose that [an unlimited durational] limitation [on the use of confidential information] will prevent defendant[s] from pursuing [their] livelihood or that it will have the effect of precluding [them] from operating a successful [competing business]" (*Chernoff Diamond & Co. v Fitzmaurice, Inc.*, 234 AD2d 200, 202 [1996]). In any event, if a jury were to find that defendants violated an otherwise valid agreement, the court could simply modify the agreements' duration to one more reasonable under the circumstances.

Courts have the "power to sever and grant partial enforcement for an overbroad employee restrictive covenant" as long as the covenant does not otherwise "violate the tripartite common-law test for reasonableness" (*BDO Seidman*, 93 NY2d at 394, 393); that is, the covenant "(1) is *no greater* than is required for the protection of the *legitimate interest* of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public" (*id.* at 388-389). Thus, as *BDO Seidman v Hirshberg* explains,

"when . . . the unenforceable portion is not an es-

---

**2.** *Airline Delivery Servs. Corp. v Lee* (72 AD2d 731 [1979]), cited by the dissent, does not dictate a different result. In *that case*, this Court noted that "covenants which perpetually restrict an employee from working for another are invalid and must fail" (*id.*, citing *Kaumagraph Co. v Stampagraph Co.*, 235 NY 1 [1923]). In this case, however, the confidentiality agreements do not perpetually restrict defendants from working for someone else or in a similar business. Indeed, there is no evidence in the record that defendants were unable to operate a successful business once they left plaintiff. Rather, the agreements at issue merely attempt to prevent defendants from unfairly using plaintiff's trade secrets. In this respect, *Kaumagraph* supports plaintiff's position in this case. There, the Court noted that the contracts at issue were

"unlimited as to time and [were] valid as a basis for equitable relief only as they protect[ed] trade secrets acquired during a confidential employment. They merely express[ed] the implied contract of one who enters into such an employment not to carry elsewhere into competition with his employer confidential knowledge obtained from him" (*id.* at 6).

sential part of the agreed exchange, a court should conduct a case specific analysis, focusing on the conduct of the employer in imposing the terms of the agreement. *Under this approach, if the employer demonstrates an absence of overreaching, coercive use of dominant bargaining power, or other anti-competitive misconduct, but has in good faith sought to protect a legitimate business interest, consistent with reasonable standards of fair dealing,* partial enforcement may be justified" (93 NY2d at 394 [emphasis added and citations omitted]).[3]

Whether the performance is an essential part of the agreed exchange depends on its relative importance in the light of the entire agreement between the parties (Restatement [Second] of Contracts § 184, Comment *a*).

Here, the essential part of the agreements is not their duration but the prohibition against using, copying or removing confidential information. Moreover, at least with respect to Jones, the agreement was not imposed as a condition of his initial employment. Instead, he was asked to sign it after working for plaintiff for approximately 14 years. And, although Obuchowski was asked to sign the agreement when he commenced his employment (*cf.* Restatement [Second] of Contracts § 184, Comment *b* ["(t)he fact that the term is contained in a standard form supplied by the (former employer) argues against aiding (the former employer) in this request"]), there is no evidence that plaintiff was motivated by some "general plan to forestall competition" or otherwise "imposed the covenant in bad faith, knowing full well that it was overbroad" (*BDO Seidman,* 93 NY2d at 395). Rather, viewing the evidence in the light most favorable to plaintiff, as we must, it was legitimately attempting

---

**3.** In rejecting the concern that partial enforcement would require the rewriting of the parties' agreement, the Court noted that the only revision required was to narrow the restriction. It also went on to note:

"Moreover, to reject partial enforcement based solely on the extent of necessary revision of the contract resembles the now-discredited doctrine that invalidation of an entire restrictive covenant is required unless the invalid portion was so divisible that it could be mechanically severed, as with a 'judicial blue pencil.' The Restatement (Second) of Contracts rejected that rigid requirement of strict divisibility before a covenant could be partially enforced (*see*, Reporter's Note, Restatement [Second] of Contracts § 184, at 32). Thus, we conclude that severance is appropriate, rendering the restrictive covenant partially enforceable" (*id.* [citation omitted]).

to protect information that it had taken years to develop. The fact that plaintiff's president was unable to state at his deposition the actual amount of time and money plaintiff had spent developing these contacts does not, as the dissent suggests, defeat its position.

The dissent also posits that a court cannot "sever" a nonexistent durational requirement. We disagree for the reasons stated above. There is a durational requirement in these contracts; the duration is unlimited. A court, however, may find that the unlimited durational requirement is overbroad in this case and reduce it to a more reasonable one, especially if it were to find that the client information was in fact a trade secret, but a secret which professionals in the business would have ultimately determined on their own after working in the industry for a period of years. That plaintiff did not insert a limited or reasonable durational limit in the contracts is of no moment. In the circumstances of this case, a court has the power to enforce the covenants to the extent it deems reasonable.

Furthermore, while "[a]n employee may create a competing business prior to leaving his employer without breaching any fiduciary duty unless he makes improper use of the employer's time, facilities or proprietary secrets in doing so" (*Schneider Leasing Plus v Stallone*, 172 AD2d 739, 741 [1991], *lv dismissed* 78 NY2d 1043 [1991]), defendants have failed to establish that they did not use any confidential or proprietary information for the benefit of Altair in violation of the confidentiality agreements and their fiduciary duties to their former employer. Indeed, the opposite is true. Evidence in the record establishes that in the summer of 2003, while still working for plaintiff, defendants prepared and distributed to plaintiff's clients a commentary on investment performance for the second quarter of 2003 and their forecast for the third quarter. As previously noted, this was done on plaintiff's letterhead without its Investment Advisory Committee's approval and in breach of company policies. Moreover, although the dissent correctly finds that plaintiff's past performance data was available to the public and therefore was not a protected trade secret, the manner in which defendants used that information as part of the promotional literature they sent to plaintiff's clients might nonetheless be found by the trier of fact to be in violation of their fiduciary duties of good faith and fair dealing to plaintiff (*see Leo Silfen*, 29 NY2d at 391-392; *Duane Jones Co. v Burke*, 306 NY 172, 188-189 [1954]).

Plaintiff's cross motion for reinstatement of the previously issued preliminary injunction was properly denied in circumstances where plaintiff agreed to a more limited injunction in the stipulation between the parties that discontinued the prior action without prejudice.

Accordingly, the order of the Supreme Court, New York County (Shirley Werner Kornreich, J.), entered October 4, 2006, which granted defendants' motion for summary judgment solely to the extent of dismissing the fifth and sixth causes of action and denied plaintiff's cross motion to reinstate a previously issued preliminary injunction, should be affirmed, with costs.

McGUIRE, J. (dissenting in part). I respectfully dissent in part. While I agree with the majority that defendants are not entitled to summary judgment dismissing certain aspects of plaintiff's cause of action for breach of fiduciary duty, I disagree that defendants are not entitled to summary judgment dismissing the remaining causes of action. Throughout its analysis the majority repeatedly stresses the conduct allegedly committed by defendants that supports the cause of action for breach of fiduciary duty. But that conduct is not relevant to the question of whether defendants should have been granted summary judgment dismissing the remaining causes of action. As discussed below, because we are reviewing an order deciding a motion for summary judgment, our disposition of this appeal must turn on the evidence submitted on the motion, not on plaintiff's allegations.

Plaintiff is an investment management firm that manages equity and fixed income securities investments. Defendant Jones worked for plaintiff for 17 years, rising to the level of managing director. Jones was also a member of plaintiff's investment committee. Defendant Obuchowski worked for plaintiff for 1½ years, serving as a director of research. While in plaintiff's employ Jones signed a confidentiality agreement prepared by plaintiff. The agreement Jones signed stated that he would not, at any time,

> "use for any purpose other than the performance of his . . . duties with [plaintiff], reveal, divulge or make known to any person (other than [plaintiff]) any records, data, trade secrets . . . or any other confidential or proprietary information of [plaintiff] or any Client whatever (the 'Confidential Information') used by [plaintiff] and made known . . . to

> [Jones] by reason of his . . . employment by [plaintiff]. [Jones] further covenants and agrees that he . . . shall retain all such knowledge and information which he . . . shall acquire or develop respecting such Confidential Information in trust for the sole benefit of [plaintiff]. . . Upon termination of his . . . employment with [plaintiff], [he] will deliver to [plaintiff] any and all copies of any Confidential Information which is in [his] possession or under [his] control . . . and shall not, directly or indirectly, copy, take, or remove from [plaintiff's] premises . . . any of the books or records, client lists or client information or any other documentation of [plaintiff] including, without limitation, those which incorporate any Confidential Information."

Jones' confidentiality agreement was supplemented to include within the definition of "Confidential Information" "any information concerning a client of [plaintiff] or the account of such client." Obuchowski signed a confidentiality agreement that was substantially similar to Jones' agreement as supplemented.

Both Jones and Obuchowski resigned from plaintiff in August 2003. Less than a week after they resigned from plaintiff, Jones and Obuchowski formed defendant Altair Investments NA, LLC, an investment management firm. During October and December 2003, Altair sent promotional literature by Federal Express to approximately 50 individuals; six of the individuals were contact persons at plaintiff's institutional clients and 38 others were financial industry professionals who had referred clients to plaintiff.

Plaintiff commenced an action (*Ashland I*) for damages and injunctive relief against Jones, Obuchowski and Altair. The gravamen of the action was that Jones and Obuchowski, while still employed by plaintiff, took steps to form Altair and promote themselves at plaintiff's expense, and that, upon leaving plaintiff's employ, they misappropriated plaintiff's confidential information, namely a client list and performance data, to solicit plaintiff's clients. Plaintiff did not contend that the names of its clients are trade secrets. Rather, plaintiff asserted that the names of representatives of plaintiff's clients and the names of employees at wealth management firms who refer potential

clients to plaintiff are trade secrets.[1] Thus, plaintiff asserted against Jones and Obuchowski causes of action for breach of fiduciary duty based on their (1) alleged use of plaintiff's time and resources to form Altair and promote themselves at plaintiff's expense and (2) misappropriation of plaintiff's client list and performance data. Plaintiff also asserted against Jones and Obuchowski causes of action for breach of their respective confidentiality agreements based on their use of the client list to solicit business for Altair and of plaintiff's performance data while misrepresenting it as defendants' own. Lastly, plaintiff asserted a cause of action against Altair for unfair competition.[2] In an effort to settle the matter, the parties stipulated to discontinue *Ashland I* without prejudice to plaintiff recommencing the action.

Plaintiff subsequently commenced this action—*Ashland II*—which seeks the same relief on the same theories as asserted in *Ashland I*. Defendants jointly moved for summary judgment dismissing the complaint. Plaintiff cross-moved to reinstate a preliminary injunction issued by the court in *Ashland I* enjoining defendants from soliciting plaintiff's clients. Supreme Court, among other things, denied those portions of the motion seeking summary judgment dismissing the causes of action for breach of fiduciary duty, breach of the confidentiality agreements and unfair competition, as well as the cross motion.[3] This appeal by defendants and cross appeal by plaintiff ensued.

In its brief, plaintiff admits that the confidentiality agreements signed by Jones and Obuchowski are in fact restrictive covenants that bar them from soliciting the contact persons. Restrictive covenants relating to employment are not favored, are subject to careful scrutiny (*BDO Seidman v Hirshberg*, 93 NY2d 382, 388 [1999]) and are unenforceable unless reasonable in scope, duration and geographic area (*Columbia Ribbon &*

---

1. For ease of reference, the representatives of plaintiff's clients and the employees at wealth management firms will be referred to collectively as "contact persons."

2. While plaintiff asserted against defendants causes of action for conversion and tortious interference with contract, Supreme Court granted those portions of defendants' motion seeking summary judgment dismissing those causes of action. In its brief, plaintiff does not address those portions of Supreme Court's order. Thus, plaintiff has abandoned those causes of action.

3. Pursuant to the stipulation terminating *Ashland I*, defendants are enjoined from soliciting certain people pending the termination of this action or a finding that the names of specified people are not trade secrets. The injunction plaintiff sought in its cross motion is broader than the one imposed by the stipulation.

*Carbon Mfg. Co. v A-1-A Corp.*, 42 NY2d 496, 499 [1977]; *Reed, Roberts Assoc. v Strauman*, 40 NY2d 303, 307 [1976]). A distinction must be drawn between a restrictive covenant restraining competition by a former employee whose services were "unique or extraordinary" and a covenant restraining competition by a former employee whose services were not. Restrictive covenants restraining competition by former employees whose services were "unique or extraordinary" are given wider latitude by the courts and are subject to less exacting scrutiny than is applied to covenants restraining competition by former employees whose services were not "unique or extraordinary" (*see BDO Seidman*, 93 NY2d at 389-390). Since plaintiff does not even argue (let alone establish) that Jones and Obuchowski provided "unique or extraordinary" services, we should carefully scrutinize their confidentiality agreements (*see id.* at 388).

Here, the agreements are not limited in duration and thus are unreasonable as a matter of law and unenforceable (*Airline Delivery Servs. Corp. v Lee*, 72 AD2d 731 [1st Dept 1979]). *Chernoff Diamond & Co. v Fitzmaurice, Inc.* (234 AD2d 200 [1996]), relied upon by the majority, is clearly distinguishable since the restrictive covenant there was limited in duration (*id.* at 201-202 [two-year restrictive covenant enforceable]).

The majority cites to no authority that permits judicial enforcement of restrictive covenants that restrain competition indefinitely by former employees whose services were not "unique or extraordinary." The treatise (6 Lord, Williston on Contracts § 13:5 [4th ed]) relied upon by the majority does not support its position that "the mere fact that the confidentiality agreements were not limited in duration does not necessarily make them ipso facto unenforceable." Rather, the treatise merely articulates a test for determining whether any particular time limitation is permissible. Moreover, the treatise does not undercut the unequivocal, well-established principle that restrictive covenants must be reasonable in duration (*see e.g. American Broadcasting Cos. v Wolf*, 52 NY2d 394, 403-404 [1981] ["an otherwise valid (restrictive) covenant will not be enforced if it is unreasonable in time"]; *Columbia Ribbon & Carbon Mfg. Co.*, 42 NY2d at 499 ["(restrictive) covenants will be enforced only if reasonably limited temporally"]; *Gelder Med. Group v Webber*, 41 NY2d 680, 683 [1977] [restrictive covenants are enforceable "if they are reasonable as to time"]; *Reed, Roberts Assoc.*, 40 NY2d at 307 ["a restrictive covenant will only be subject to specific enforcement to the extent that it is reasonable in time"]).

The majority's reliance on *Karpinski v Ingrasci* (28 NY2d 45 [1971]) is misplaced. The Court in *Karpinski* concluded that a restrictive covenant restraining an oral surgeon from practicing in several upstate counties was enforceable even though it was unlimited in duration because " 'contracts [restricting competition between] physicians, surgeons and others of kindred profession' . . . 'will not be denied [enforcement] merely because . . . unlimited as to time, where as to area the restraint is limited and reasonable' " (*id.* at 50, quoting *Foster v White*, 248 App Div 451, 456 [1936], *affd* 273 NY 596 [1937] [restrictive covenant, unlimited in duration, prohibiting a physician from practicing in a particular upstate county]; *see BDO Seidman*, 93 NY2d at 389 ["With agreements not to compete between professionals . . . we have given greater weight to the interests of the employer in restricting competition within a confined geographical area. In *Gelder Med. Group v Webber* (41 NY2d 680) and *Karpinski v Ingrasci* (28 NY2d 45), we enforced total restraints on competition, in limited rural locales, permanently in *Karpinski* and for five years in *Gelder. The rationale for the differential application of the common-law rule of reasonableness expressed in our decisions was that professionals are deemed to provide 'unique or extraordinary' services*" (emphasis added)]).

An anticompetition covenant between an employer and an employee whose services are "unique or extraordinary" is one type of restrictive covenant that is not subject to exacting scrutiny. Another is an anticompetition covenant given by one who sells a business to another.

> "[W]here a business is sold, anticompetition covenants will be enforceable, if reasonable in time, scope and extent. These covenants are designed to protect the goodwill integral to the business from usurpation by the former owner while at the same time allowing an owner to profit from the goodwill which he may have spent years creating. However, *where an anticompetition covenant given by an employee to his employer is involved a stricter standard of reasonableness will be applied*" (*Reed, Roberts Assoc.*, 40 NY2d at 307 [citations omitted and emphasis added]; *see Diamond Match Co. v Roeber*, 106 NY 473 [1887] [99-year restrictive covenant in sale of match manufacturing business]; *Goos v Pennisi*, 10 AD2d 643 [1960] [restrictive covenant unlimited in duration in sale of barber shop]; *Lap-*

*pono v Marmone*, 204 App Div 496 [1923] [restrictive covenant unlimited in duration in sale of shoe repair and hat cleaning business]; *see also Mohawk Maintenance Co. v Kessler*, 52 NY2d 276 [1981]).

Thus, cases dealing with restrictive covenants given in the context of the sales of businesses afford no support for the majority's position.

My position, supported by our precedent (*Airline Delivery Servs. Corp., supra*) and buttressed by Court of Appeals case law, is that a restrictive covenant that prevents a former employee whose services are not "unique or extraordinary" from soliciting the representatives of the employer's clients and the employees of firms who steered clients to the employer cannot be unlimited in duration. I note, moreover, that the anticompetition covenants in this case are neither limited in duration nor confined to a specified geographical area. Even assuming that these covenants would not effectively prevent Jones and Obuchowski from continuing to earn a living in their respective positions, the covenants would at the very least substantially curtail the work they could do. Tellingly, the majority does not cite a single case enforcing a restrictive covenant that permanently prevents a former employee whose services are not "unique or extraordinary" from soliciting the former employer's clients.[4]

---

4. The majority's reliance on *Kaumagraph Co. v Stampagraph Co.* (235 NY 1 [1923]) is misplaced. There, the plaintiff manufactured and sold transfer stamps and embroidery patterns. The plaintiff asserted that it had a special method for manufacturing those goods, one that provided plaintiff with an advantage over its competitors; however, this method was known, used and patented in England many years before the plaintiff opened its business in the United States. The plaintiff's knowledge of the English patents underlying its method of production was obtained from several employees who learned of the patents while employed in England. Two of the employees signed contracts of employment with the plaintiff forever forbidding them from engaging in any business similar to plaintiff's in certain areas (without plaintiff's prior written consent) or disclosing the plaintiff's method of production. The defendants, some of whom were former employees of the plaintiff, including the two men who signed the contracts, opened a competing business without the plaintiff's approval. The plaintiff sued the defendants, seeking to enjoin them from operating the business. The Court of Appeals affirmed the Appellate Division's order finding that the plaintiff had learned of the information underlying its method from its employees from England; the employees did not learn a trade secret while in the plaintiff's employ but had shared with the plaintiff the information regarding the patents. Because the defendants had not learned any trade secrets while in the plaintiff's employ, the plaintiff's action was dismissed. Thus, the language the majority quotes from *Kaumagraph*—

Hedging against its conclusion that the agreements can be unlimited in duration, the majority suggests that a court could "sever" the agreements to make them partially enforceable. But what is not in the agreements cannot be severed from them. What the majority would "sever" are the nonexistent durational components of the agreements. The majority would do so, moreover, despite the absence of a severance clause in the agreement. Thus, the majority would insert new substantive provisions to which the parties did not agree (see *Crippen v United Petroleum Feedstocks*, 245 AD2d 152 [1997]).[5] Notably, plaintiff has not requested that we "sever" the agreements in this or any fashion, and neither plaintiff nor defendants have briefed this issue. Nonetheless, the majority purports to "sever" from the covenants the unrestricted sweep of the covenants.

The only case the majority discusses in this regard, *BDO Seidman*, does not support its position. The Court in *BDO Seidman* determined that it could sever from the subject restrictive covenant, which was limited in duration, portions of it that the Court determined were overbroad, making the covenant partially enforceable. The Court specifically stated that "[n]o additional substantive terms [were] required. The time and geographical limitations on the covenant remain[ed] intact. The only change [wa]s to narrow the class of [plaintiff's] clients to which the covenant applie[d]" (93 NY2d at 395, citing *Karpinski*, 28 NY2d at 51-52 [Court severed overbroad portion of covenant—that which prohibited defendant from practicing general dentistry—and enforced portion of covenant prohibiting defendant from practicing oral surgery]). Here, the majority is not severing overbroad provisions from the agreements but adding substantive terms to them, i.e., durational components (see *Crippen, supra*). The majority does not cite a single case in which a court "severed" from a restrictive covenant a nonexis-

---

contracts "unlimited as to time . . . are valid as a basis for equitable relief only as they protect trade secrets acquired during confidential employment. They merely express the implied contract of one who enters into such an employment not to carry elsewhere into competition with his employer confidential knowledge obtained from him" (*id.* at 6)—is dicta. Furthermore, to the extent that this dicta could be viewed as supporting the majority's position, *Kaumagraph* predates the now well-established line of Court of Appeals case law that requires courts to scrutinize strictly restrictive covenants of former employees whose services were not "unique or extraordinary" (*e.g. BDO Seidman*, 93 NY2d at 389; *Reed, Roberts Assoc.*, 40 NY2d at 308).

**5.** The majority does not indicate how it would "sever" the agreements. That is to say the majority does not state the length of the durational components it—not the parties—believes the agreements should contain.

tent durational component and added a time limitation that the court, not the parties, determined was reasonable.

"Severance" is not appropriate for an additional reason. The Court in *BDO Seidman* stated that

> "when . . . the unenforceable portion [of the re-
> strictive covenant] is not an essential part of the
> agreed exchange, a court should conduct a case
> specific analysis, focusing on the conduct of the
> employer in imposing the terms of the agreement.
> Under this approach, if the employer demonstrates
> an absence of overreaching, coercive use of dominant
> bargaining power, or other anti-competitive miscon-
> duct, but has in good faith sought to protect a legit-
> imate business interest, consistent with reasonable
> standards of fair dealing, partial enforcement may
> be justified" (93 NY2d at 394 [citations omitted]).

Thus,

> "[f]actors weighing against partial enforcement are
> the imposition of the covenant in connection with
> hiring or continued employment—as opposed to, for
> example, imposition in connection with a promotion
> to a position of responsibility and trust—the exis-
> tence of coercion or a general plan of the employer
> to forestall competition, and the employer's knowl-
> edge that the covenant was overly broad" (*Scott,
> Stackrow & Co., C.P.A.'s, P.C. v Skavina*, 9 AD3d
> 805, 807 [2004], *lv denied* 3 NY3d 612 [2004], citing
> *BDO Seidman*, 93 NY2d at 395).

Applying these principles, the Court in *BDO Seidman* severed an overbroad portion of a restrictive covenant and partially enforced it. The Court determined that severance and partial performance were appropriate because "[t]he covenant was not imposed as a condition of defendant's initial employment, or even his continued employment, but in connection with [a] promotion" (*BDO Seidman*, 93 NY2d at 395).

The majority certainly cannot assume that these factors weigh in favor of partial enforcement. To the contrary, Jones was pre-sented with the agreement in October 2000 after working for plaintiff for 13 years, and, as plaintiff's president testified, had Jones not signed the agreement as presented he would have been fired. Moreover, Jones was not asked to sign the agree-ment to obtain a promotion but rather as a condition to his continued employment. Similarly, Obuchowski was presented

with the agreement as a condition of his initial employment; had he not signed it as presented, plaintiff's president testified, Obuchowski would not have been hired. Neither Jones nor Obuchowski negotiated the terms of their respective agreements and neither received any benefit beyond initial or continued employment. The agreements therefore were not the product of "agreed exchange[s]," but rather plaintiff's dominant bargaining power. Accordingly, "severance" and partial enforcement of the agreements are inappropriate in this case (*see Scott, Stackrow & Co., supra* [overbroad restrictive covenant would not be partially enforced where employer required employee to sign covenant as a condition of both her initial and continued employment, and employee received no benefit in exchange for signing the covenant beyond continued employment]).

The majority states that

> "[a] court . . . may find that the unlimited durational requirement[s are] overbroad in this case and reduce [them] to . . . more reasonable one[s], especially if it were to find that the client information was in fact a trade secret, but a secret which professionals in the business would have ultimately determined on their own after working in the industry for a period of years."

This is unpersuasive. Whether an overbroad restrictive covenant should be partially enforced is determined by examining both whether the unenforceable portion of the agreement is "an essential part of the agreed exchange" and whether "the employer demonstrates an absence of overreaching, coercive use of dominant bargaining power, or other anti-competitive misconduct" (93 NY2d at 394). Those inquiries are focused on the circumstances surrounding the negotiations, if any, and execution of an agreement and the employer's motivations in requesting the employee to sign it. Whether a purported trade secret is indeed a trade secret is irrelevant in ascertaining whether an overbroad restrictive covenant is partially enforceable.

Additional, independent grounds exist for dismissing the causes of action asserted against Jones and Obuchowski for breach of their respective confidentiality agreements. With respect to the aspects of those causes of action that are based on Jones and Obuchowski's misappropriation of plaintiff's client list, a restrictive covenant is only enforceable to the extent necessary to protect the employer from the former employee's use

or disclosure of trade secrets (*see Columbia Ribbon & Carbon Mfg. Co.*, 42 NY2d at 499). A client list is not in and of itself a trade secret. To be afforded trade secret protection, a client list must either be defined as a trade secret in an enforceable agreement between the parties or have attributes of a trade secret (*Leo Silfen, Inc. v Cream*, 29 NY2d 387, 392-393, 395 [1972]). Here, for the reasons discussed above, the agreements are unenforceable.

Nor do the names of plaintiff's contact persons have attributes of trade secrets. A client list may be a trade secret where the clients are discoverable only by extraordinary efforts, such as where the clients' business was "secured by years of effort and advertising effected by the expenditure of substantial time and money" (*id.* at 393). In support of their motion, defendants submitted the deposition testimony of plaintiff's president. With respect to the efforts taken by plaintiff to identify the contact persons and cultivate their business, plaintiff's president was unable to provide any testimony indicating the amount of time and money spent identifying those persons and cultivating their business despite being asked numerous direct questions on those subjects. Notably, plaintiff's president was asked how much money plaintiff spent to identify various clients and cultivate their business; as to each such question plaintiff's president answered "I don't know," "I have no idea" or "No idea." Based on this testimony, defendants made a prima facie showing that plaintiff did not spend substantial time and money to identify the contact persons and cultivate their business.

In opposition, plaintiff failed to raise a triable issue of fact in this regard. Plaintiff's president averred that "[plaintiff's] list of clients cannot be readily ascertained from publicly available sources. These clients have specific investment needs and [plaintiff] has identified and cultivated these clients over the years through the expenditure of considerable time and money." Later in his affidavit, plaintiff's president averred that

> "over the years, [plaintiff] has identified and developed relationships with clients and with specific individuals who are the brokers, custodians, or consultants for specific types of investment accounts. The identity of these individuals is not public knowledge. [Plaintiff]'s list of these individuals cannot be duplicated simply by resort to a phonebook or even to the internet. [Plaintiff]'s list is confidential, proprietary information that is very valuable to [plaintiff]'s competitors."

These conclusory averments, bereft of any factual detail regarding the efforts and resources plaintiff expended in identifying the contact persons and cultivating their business, are insufficient to raise a triable issue of fact. As the Court of Appeals has repeatedly noted, " '[a]verments merely stating conclusions, of fact or of law, are insufficient' to 'defeat summary judgment' " (*Banco Popular N. Am. v Victory Taxi Mgt.*, 1 NY3d 381, 383 [2004], quoting *Mallad Constr. Corp. v County Fed. Sav. & Loan Assn.*, 32 NY2d 285, 290 [1973]).[6]

Additionally, defendants, through the affidavits of Jones and Obuchowski and Jones' deposition testimony, made a prima facie showing both that neither Jones nor Obuchowski took a client list and that Jones (and to a lesser extent Obuchowski) recalled from casual memory the names of the contact persons (*see Falco v Parry*, 6 AD3d 1138, 1138-1139 [2004], citing *Arnold K. Davis & Co. v Ludemann*, 160 AD2d 614, 615 [1990] and *Levine v Bochner*, 132 AD2d 532, 532-533 [1987]; *see also Leo Silfen, Inc.*, 29 NY2d at 391 n 1).[7] In opposition, plaintiff failed to raise a triable issue of fact with respect to whether Jones, Obuchowski or both, prior to leaving plaintiff's employ, took, copied or studiously memorized a client list (*see Leo Silfen, Inc.*, 29 NY2d at 391-392, 395; *Falco*, 6 AD3d at 1138; *Arnold K. Davis & Co.*, 160 AD2d at 615; *Levine*, 132 AD2d at 533). Plaintiff's president's affidavit provides no factual averments on this score and contains nothing more than speculative

---

**6.** Contrary to the assertion of the majority, I do not think that plaintiff's president's inability "to state at his deposition the actual amount of time and money plaintiff had spent developing [its] contacts" defeats plaintiff's claim that the names of the contact persons are trade secrets. But the absence of testimony regarding the amount of time and money plaintiff spent is highly relevant to our inquiry regarding whether a triable issue of fact exists. What is fatal to plaintiff's claim is its failure to submit any evidence regarding whether the identities of the contact persons were "secured by years of effort and advertising effected by the expenditure of substantial time and money" (*Leo Silfen, Inc.*, 29 NY2d at 393).

**7.** In its first footnote, the majority states that my reliance on cases holding that information is not a trade secret if it is recalled from casual memory is "inapposite inasmuch as there were no express agreements in those cases." However, in my view, the restrictive covenants are unenforceable as a matter of law and concomitantly no relevant "express agreements" are present in this matter. Thus, the casual memory cases I cite above support my position that Jones and Obuchowski made a prima facie showing that they did not misappropriate a client list because they recalled from casual memory the names of the contact persons.

statements that Jones and Obuchowski stole plaintiff's client list.[8]

To the extent that the causes of action asserted against Jones and Obuchowski for breach of their respective confidentiality agreements are based on their misappropriation of plaintiff's performance data, defendants made a prima facie showing that they did not misappropriate the data. In opposition, plaintiff claimed that Jones, Obuchowski or both took plaintiff's past performance information and misrepresented it as defendants' own in Altair's promotional literature. However, plaintiff's president testified at his deposition that plaintiff's past performance data, which is disseminated by plaintiff to attract business, is public knowledge. Thus, the data is not a trade secret (*see Eagle Comtronics v Pico, Inc.*, 89 AD2d 803, 804 [1982], *lv denied* 58 NY2d 601 [1982]; *see also* 5 Haig, Commercial Litigation in New York State Courts § 81:6, at 9-10 [4B West's NY Prac Series, 2d ed 2005] ["Most important of all is the defining element of secrecy, which is routinely identified as an *essential prerequisite* and the *most important* consideration in trade secrets litigation. According to the New York courts, secrecy embraces the related notions of substantial exclusivity of knowledge and the employment of precautionary measures to preserve such exclusive knowledge by limiting legitimate access by others" (footnotes and internal quotation marks omitted; emphasis added)]). Moreover, defendants did not misrepresent plaintiff's performance data in Altair's promotional literature. The literature contained a graph showing plaintiff's performance between 1997 and June 2003, the period of time during which Jones was a

---

**8.** Plaintiff seems to be of the view that the addresses of the contact persons are trade secrets. Thus, plaintiff makes much of the fact that Jones and Obuchowski were unable to demonstrate that they recalled from casual memory the addresses of the contact persons or used public sources to obtain those addresses. In his affidavit, plaintiff's president also makes much of the fact that defendants used plaintiff's Federal Express account to send Altair's promotional materials to numerous individuals. However, during his deposition, plaintiff's president discounted the importance, if any, of defendants' use of the account. Thus, in response to a line of questioning regarding whether he had seen a letter Altair sent to plaintiff notifying plaintiff that Altair had mistakenly used plaintiff's account, plaintiff's president testified that "I don't know whether [Altair's use of the account] has anything to do with the fact that Mr. Jones was using our client list to solicit accounts. I don't think it has any bearing on that at all." In any event, and unsurprisingly, plaintiff has no answer to defendants' point that, since Jones and Obuchowski knew the names of the contact persons and the names of the firms at which they worked, defendants could simply contact the firms and obtain the specific addresses of the contact persons.

member of plaintiff's investment committee. Text both on the page of the graph and the page after the graph expressly states that the past performance data is that of plaintiff.

The majority asserts that "the manner in which defendants used that information as part of the promotional literature they sent to plaintiff's clients might nonetheless be found by the trier of fact to be in violation of their fiduciary duties of good faith and fair dealing to plaintiff." Not surprisingly, the majority does not make any attempt to explain how the manner in which defendants cited this public information, while expressly acknowledging that this public information was plaintiff's, breached a fiduciary duty to plaintiff. Inexplicably, the majority goes so far as to state as if it were an undisputed fact that "defendants also *stole* plaintiff's performance data" (emphasis added). Obviously, public information cannot be stolen.

That portion of defendants' motion seeking summary judgment dismissing the causes of action for breach of fiduciary duty based on Jones and Obuchowski's misappropriation of plaintiff's client list should also be granted. As discussed above, defendants made prima facie showings that neither Jones nor Obuchowski took a client list and that both Jones and Obuchowski recalled from casual memory the names of the contact persons, and plaintiff failed to raise a triable issue of fact with respect to whether Jones, Obuchowski or both, prior to leaving plaintiff's employ, took, copied or studiously memorized a client list.[9]

Rather than discuss the *evidence* submitted on the parties' motions regarding whether the names of the contact persons constituted trade secrets and whether defendants misappropriated plaintiff's performance data, the majority focuses on plaintiff's *allegations*. We are, however, reviewing an order deciding a motion for summary judgment (*see* CPLR 3212), not a motion to dismiss for failure to state a cause of action (*see* CPLR 3211). While we must (and I do) view the evidence in the light most favorable to plaintiff, the party opposing summary judgment, no view of the evidence demonstrates the existence of genuine, triable issues of fact regarding whether the names of

---

**9.** The cause of action asserted against Altair for unfair competition, which is premised on the conduct of Jones and Obuchowski following the termination of their employment at plaintiff, should be dismissed. As discussed above, defendants made a prima facie showing that neither Jones nor Obuchowski misappropriated plaintiff's client list or performance data and plaintiff failed to raise a triable issue of fact.

the contact persons were trade secrets, whether defendants misappropriated the names or whether defendants misappropriated plaintiff's performance data (*see S.J. Capelin Assoc. v Globe Mfg. Corp.*, 34 NY2d 338, 342 [1974] ["Bald conclusory assertions, even if believable, are not enough to defeat summary judgment" (internal quotation marks and brackets omitted)]). General summary judgment principles, such as evidence must be viewed in the light most favorable to the party opposing summary judgment and whether a client list is a trade secret is generally an issue of fact, are not substitutes for evidence and cannot bridge evidentiary gaps in plaintiff's proof.

All that remains are those portions of the causes of action against Jones and Obuchowski for breach of fiduciary duty that are based on Jones and Obuchowski's use of plaintiff's time and resources to form Altair and promote themselves.[10] Specifically, plaintiff claims that, prior to leaving its employ, Jones and Obuchowski did the following: (1) registered a domain name on the Internet for Altair; (2) sent a newsletter, without plaintiff's permission, on its letterhead to certain clients informing them of the performance of plaintiff's investments; (3) visited plaintiff's then largest client on plaintiff's behalf but without its permission and met with the client's pension fund personnel in an effort to convince the client to terminate its account with plaintiff; and (4) contacted certain of plaintiff's clients and informed them that they were starting their own firm. In their main brief, defendants only make the general assertion that "the record contains no evidence either Jones or Obuchowski diverted any of plaintiff's property or business at any time while in plaintiff's employ" (internal quotation marks omitted); that brief does not address the particulars of the breach of fiduciary duty claims that are based on Jones and Obuchowski's conduct prior to leaving plaintiff's employ. Thus, defendants have essentially abandoned their contention that those claims should be dismissed (*see New York Mut. Underwriters v Baumgartner*, 19 AD3d 1137, 1140-1141 [2005]).

---

10.  " '[An employee] is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties. Not only must the employee or agent account to his principal for secret profits but he also forfeits his right to compensation for services rendered by him if he proves disloyal' " (*Maritime Fish Prods. v World-Wide Fish Prods.*, 100 AD2d 81, 88 [1984], *appeal dismissed* 63 NY2d 675 [1984], quoting *Lamdin v Broadway Surface Adv. Corp.*, 272 NY 133, 138 [1936]). While an employee may secretly incorporate a competitive business prior to his departure, he may not use his employer's time, facilities or proprietary secrets to build the competing business (*id.*).

Finally, I agree with the majority that Supreme Court properly denied plaintiff's cross motion seeking reinstatement of the preliminary injunction issued in *Ashland I.*

Accordingly, I would modify the order to the extent of granting those portions of defendants' motion seeking summary judgment dismissing the causes of action against Jones and Obuchowski for breach of their respective confidentiality agreements, the causes of action against Jones and Obuchowski for breach of fiduciary duty premised on their misappropriation of plaintiff's client list and performance data, and the cause of action against Altair for unfair competition, and otherwise affirm.

ANDRIAS, J.P., and WILLIAMS, J., concur with ACOSTA, J.; NARDELLI and McGUIRE, JJ., dissent in part in a separate opinion by McGUIRE, J.

Order, Supreme Court, New York County, entered October 4, 2006, affirmed, with costs.