17-2274-cv
DeWitt Stern Group, Inc. v. Richard Eisenberg, et al.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of May, two thousand eighteen.

PRESENT: PETER W. HALL,
SUSAN L. CARNEY,
*Circuit Judges.*
JOHN G. KOELTL,*
*District Judge.*

-----------------------------------------------------------------------
DeWitt Stern Group, Inc.,

      *Plaintiff-Appellant*,

      v.           No. 17-2274-cv

Richard Eisenberg and Arthur J. Gallagher Risk Management
Services, Inc.

      *Defendants-Appellees*.
-----------------------------------------------------------------------

| | |
|---|---|
| For Appellant: | PETER J. BIGING, Goldberg Segalla LLP (Stewart G. Milch, *on the brief*), Buffalo and New York, New York. |
| For Appellees: | CARMEN J. DIMARIA, Ogletree, Deakins, Nash, Smoak, & Stewart, P.C. (Aaron Warshaw and Nicole A. Welch, *on the brief*), New York, New York. |

* Judge John G. Koeltl, of the United States District Court for the Southern District of New York, sitting by designation.

Appeal from a judgment of the United States District Court for the Southern District of New York (Sweet, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Appellant DeWitt Stern Group, Inc. ("DeWitt") appeals the district court's decision granting Appellees Richard Eisenberg's ("Eisenberg") and Arthur J. Gallagher Risk Management Services, Inc.'s ("AJG") (collectively, "Defendants") motion for summary judgment. DeWitt claims that it purchased Eisenberg's book of business when it agreed to employ Eisenberg in 2007. DeWitt further claims that Eisenberg, with the help of AJG, violated the terms of its 2012 Employment Agreement and committed several torts by soliciting DeWitt's clients on AJG's behalf. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

We review *de novo* a district court's decision granting summary judgment. *Fratello v. Archdiocese of N.Y.*, 863 F.3d 190, 198 (2d Cir. 2017). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On summary judgment, we "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)). Upon such review, we affirm for substantially the reasons stated by the district court in its well-reasoned June 26, 2017 opinion. *See Dewitt Stern Grp., Inc. v. Eisenberg*, 257 F. Supp. 3d 542 (S.D.N.Y. 2017).

## I. Scope of the 2007 Employment Agreement

DeWitt argues that the language in the opening paragraph of the 2007 Employment Agreement unambiguously demonstrates that DeWitt purchased Eisenberg's present and future book of business. To the extent the 2007 Employment Agreement is ambiguous, DeWitt asserts that the extrinsic evidence shows that the parties intended for DeWitt to purchase Eisenberg's present and future book of business.

The district court correctly concluded that the 2007 Employment Agreement is not ambiguous and does not involve the sale of Eisenberg's business. Aside from the opening paragraph, there is no indication that the 2007 Employment Agreement contemplated the sale of Eisenberg's book of business. The Agreement does not define "book of business," nor does it outline the consideration provided for Eisenberg's book of business or reference the names of any clients or accounts that DeWitt claims it purchased. Rather, the 2007 Employment Agreement simply outlines the terms of Eisenberg's employment. *See Riverside S. Planning Corp. v. CRP/Extell Riverside, L.P.*, 869 N.Y.S.2d 511, 516 (1st Dep't 2008) ("A contract is unambiguous if on its face it is reasonably susceptible of only one meaning." (internal quotation marks and brackets omitted)).

## II. The 2012 Employment Agreement

DeWitt argues that Eisenberg breached the 2012 Employment Agreement by (1) disclosing DeWitt's confidential information and soliciting former clients using DeWitt's confidential information; (2) diverting business to AJG while he was still in DeWitt's employ; and (3) forwarding client information from his DeWitt email account to his personal email account.

The district court correctly held that no reasonable jury could find that Eisenberg breached

3

the 2012 Employment Agreement. The information Eisenberg sent to his personal email account and to AJG prior to his registration was not confidential. This information belonged to Eisenberg's clients, not DeWitt, and the evidence demonstrates that Eisenberg could have obtained this information through public sources. *See Buhler v. Michael P. Maloney Consulting, Inc.*, 749 N.Y.S.2d 867, 868 (1st Dep't 2002) ("It is well settled that an employee's recollection of information pertaining to the needs and habits of particular customers is not actionable."); *JAD Corp. of Am. v. Lewis*, 759 N.Y.S.2d 388, 388 (2d Dep't 2003) (holding that employers cannot protect information that is "readily available from publicly-available sources").

DeWitt also offers no evidence that Eisenberg used this information to solicit DeWitt's clients. To the contrary, DeWitt's employees consistently testified that DeWitt's clients flocked to AJG because of their preexisting relationships with Eisenberg, not because Eisenberg used DeWitt's confidential information. *See Willis of N.Y., Inc. v. DeFelice*, 750 N.Y.S.2d 39, 42 (1st Dep't 2002) ("[S]ince the record discloses that many of [the defendant's] clients are loyal to him personally, and not to the firm at which he works, he should not be enjoined from soliciting the clients he originally brought with him to plaintiffs, or related accounts." (citation omitted)).

DeWitt has not provided any evidence that Eisenberg's discussions with AJG before his resignation went beyond preparation to compete later or caused DeWitt to suffer damages. *See Ashland Mgmt. Inc. v. Altair Invs. NA*, 869 N.Y.S.2d 465, 473 (1st Dep't 2008) ("An employee may create a competing business prior to leaving his employer without breaching any fiduciary duty unless he makes improper use of the employer's time, facilities[,] or proprietary secrets in doing so . . . ." (quoting *Schneider Leasing Plus v. Stallone*, 569 N.Y.S.2d 126, 128 (2nd Dep't 1991) (alteration omitted)). A representative from AJG testified that Guggenheim Partners, LLC

4

did not move its insurance business to AJG.   Eisenberg testified that he did not solicit New Regency and the Weinstein Company to move their business to AJG until after he left DeWitt. The evidence also shows that these clients moved to AJG because of their longstanding relationships with Eisenberg.

Lastly, DeWitt does not provide any evidence that it was injured by Eisenberg sending emails from his DeWitt email account to his personal email account.   As discussed, there is no evidence that the forwarded emails contained confidential information or that Eisenberg used the emails to solicit DeWitt's clients.   Moreover, after the district court issued a preliminary injunction, Eisenberg worked with counsel to delete the emails or return them to DeWitt.

We have considered DeWitt's remaining arguments on appeal and find them to be without merit.   We **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court