## Acrisure, LLC v Woodruff-Sawyer & Co.

2024 NY Slip Op 34540(U)

December 30, 2024

Supreme Court, New York County

Docket Number: Index No. 652801/2024

Judge: Anar Rathod Patel

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART 45

-----------------------------------------------------------------------X

ACRISURE, LLC

                                Plaintiff,

              - v -

WOODRUFF-SAWYER & CO.,

                             Defendant.

-----------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 652801/2024 |
| **MOTION DATE** | 10/04/2024 |
| **MOTION SEQ. NO.** | 006 |

**DECISION + ORDER ON MOTION**

**HON. ANAR RATHOD PATEL**:

       The following e-filed documents, listed by NYSCEF document number (Motion 006) 129–142, 148–149, 152 were read on this motion to/for __DISMISS__.

### Relevant Factual[1] and Procedural History

       This matter arises from Defendant's alleged wrongful interference with Plaintiff's business through the acquisition of Plaintiff's former employees and clients. NYSCEF Doc. No. 131 (Am. Compl.). Plaintiff Acrisure, LLC ("Plaintiff" or "Acrisure") is a Michigan limited liability company with its principal place of business in Grand Rapids, Michigan. *Id.* at ¶ 7. Defendant Woodruff-Sawyer & Co. ("Defendant" or "Woodruff") is a California corporation headquartered in San Francisco, California. *Id.* at ¶ 8. Acrisure provides "intelligence-driven financial services solutions across many industries including the insurance brokerage industry." *Id.* at ¶ 21. Woodruff is a competitor business in the insurance brokerage industry. *Id.* at ¶ 22. Non-Parties Matthew Kelly ("Kelly"), Christopher Iovino ("Iovino"), Robert Kempner ("Kempner"), Michael Rella ("Rella"), Robert Trager ("Trager"), and Eric Wagner ("Wagner") (collectively, the "Woodbury Executives") are former high-level employees of Acrisure.[2] *Id.* at ¶¶ 9–14. The Woodbury Executives resigned from their positions with Acrisure on March 15, 2024. *Id.*

*Departure of the Woodbury Executives*

       In Fall 2023, Woodruff began communicating with Kelly about leaving Acrisure to lead the opening of Woodruff's new office in Woodbury, New York. *Id.* at ¶ 29. In December 2023,

---

[1] The facts are taken from the Amended Complaint and are accepted as true for the purposes of the Motion to Dismiss the Amended Complaint.

[2] At the time of their resignations, the Woodbury executive held the following titles: (1) Kelly, Executive Vice President; (2) Iovino, Senior Insurance Broker; (3) Kempner, Senior Vice President; (4) Rella, Vice President, Director of Insurance Operations; (5) Trager, Senior Vice President; and (6) Wagner, Account Executive.

**652801/2024 ACRISURE, LLC vs. WOODRUFF-SAWYER & CO.**                 **Page 1 of 17**
**Motion No. 006**

representatives of Defendant met with Non-Parties Kelly, Wagner, Kempner, Trager, and Rella. *Id.* Kelly would later inform Iovino of his opportunity to join Defendant. *Id.* Subsequently, Defendant began negotiating terms of employment with the Woodbury Executives, with Kelly acting as the primary point of contact. *Id.* Defendant's employees worked with the Woodbury Executives to coordinate their exit. *Id.* at ¶ 30. Plaintiff alleges that Defendant further coordinated with the Woodbury Executives to plan and implement the solicitation of Plaintiff's customers and other employees using Plaintiff's resources, including confidential and proprietary information. *Id.* at ¶ 31.

Plaintiff alleges the Woodbury Executives were aware of their Non-Solicitation Covenants and Confidentiality obligations to Plaintiff and, as part of negotiations, provided said agreements to Defendant, placing Defendant on notice of their obligations thereunder. *Id.* at ¶¶ 34, 35.

The Woodbury Executives signed their respective term sheets with Defendant around the same time. *Id.* at ¶ 37. On March 7, 2024, Trager and Rella executed their respective term sheets to commence employment on March 16, 2024.[3] *Id.* On March 8, Kempner and Kelly executed their respective term sheets to commence employment on March 16.[4] *Id.* Kelly was slated to receive a "recruiting bonus" based on the "booked revenue from new employees hired as Producers as a result of Kelly's directly sourced recruiting efforts." *Id.* On March 13, Wagner executed his term sheet to commence employment on March 16.[5] *Id.* On March 14, Iovino executed his term sheet to commence employment on March 16.[6] *Id.*

On March 14, the Woodbury Executives signed their respective Employment Agreements with Defendant while still employed by Plaintiff. *Id.* at ¶ 38. The following day, the Woodbury Executives resigned from their respective positions with Plaintiff effective immediately. *Id.* at ¶ 40. Plaintiff states that the resignation e-mails used "substantially similar words and phrases" and were sent "at approximately the same time." *Id.*

On March 16, Woodruff advertised in industry newsletters that the Woodbury Executives were former members of Acrisure and that the Woodbury Executives would be joining Defendant's new Woodbury, New York office. *Id.* at ¶ 41. On March 18, Defendant issued a press release that Defendant hired the Woodbury Executives to expand its business in New York. *Id.* at ¶ 42.[7] Defendant's press release specifically names the Woodbury Executives and describes their collective professional experience. *Id.*

---

[3] Trager's new title was Vice President, Producer; Rella's new title was Vice President, Client Relationship Director, Construction.

[4] Kempner's new title was Vice President, Producer; Kelly's new title was Vice President, Market Growth Leader.

[5] Wagner's new title was Vice President, Producer.

[6] Iovino's new title was Vice President, Producer.

[7] This paragraph is erroneously numbered "38" in the Amended Complaint. The preceding and succeeding paragraphs are numbered 41 and 43, respectively.

*Solicitation of Plaintiff's Clients*

Plaintiff alleges that the Woodbury Executives, as part of Defendant's scheme, solicited clients away from Plaintiff on behalf of Defendant, and utilized Plaintiff's confidential and proprietary information in doing so. *Id.* at ¶¶ 43–76. Between March 18, and March 25, approximately 70 of Plaintiff's clients signed broker of record letters appointing Defendant as their new exclusive broker. *Id.* at ¶ 45. Plaintiff alleges that Defendant assisted the Woodbury Executives in soliciting Plaintiff's former clients, utilizing Plaintiff's confidential and proprietary information. *Id.* at ¶¶ 46–47. Plaintiff further alleges that Defendants, in conjunction with the Woodbury Executives, implemented a three-step plan to "cover-up the unlawful solicitation of [Plaintiff's] customers and employees": (1) "minimize any paper trail evidencing unlawful solicitation;" (2) "manufacture a false paper trail;" and (3) "continue to hide the proverbial ball about the unlawful activity." *Id.* at ¶¶ 50–51, 66, 76.

To "minimize any paper trail," Defendant instructed the Woodbury Executives to avoid discussing their impending departure through "text or e-mail, and to instead communicate by phone." *Id.* at ¶ 51. The Woodbury Executives, in collaboration with Defendant, reached out to Plaintiff's clients to set up in-person meetings or phone calls to induce Plaintiff's clients to transfer their respective business to Defendant. *Id.* at ¶¶ 52–65. For instance, on March 7, 2024, Iovino "exchanged text messages with an intermediary" that represented several of Plaintiff's then-clients to set up an in-person meeting. *Id.* at ¶ 52. On March 8, said intermediary sent Iovino a text message stating that the intermediary had received an e-mail from Defendant. *Id.* Defendant's employee, Roger Topp, texted Iovino that the intermediary was "'good to go.'" *Id.*

To "manufacture a false paper trail," Plaintiff's former clients "were coached on what to include in written communications" to distance Defendant and the Woodbury Executives from accusations of unlawful solicitation. *Id.* at ¶¶ 66–67. "The e-mails sent from former Acrisure customers used strikingly similar language in a way that cannot be coincidental." *Id.* at ¶ 67. Plaintiff identifies four e-mails from Plaintiff's former clients to Defendant wherein the former clients requested information from the Defendant using similar language. *Id.* at ¶¶ 69–72. These e-mails were sent between 7:00 A.M. and 8:00 A.M. E.T. on March 18, 2024, "the first business day after the [Woodbury Executives'] resignation." *Id.* at ¶¶ 68–72. Plaintiff points to another text message from Topp in which he says, "'[t]hats [*sic*] the trail we want.'" *Id.* at ¶ 75.

On March 22, 2024, Plaintiff filed an action in Michigan State Court against the Woodbury Executives ("Michigan Action"). NYSCEF Doc. No. 133 (Mich. Compl.). The Michigan Action was subsequently removed to the Western District of Michigan. NYSCEF Doc. No. 30 at ¶ 4 (Rella Aff.). To "continue to hide the proverbial ball," Plaintiffs allege that Defendant: (1) has fully indemnified the Woodbury Executives; (2) selected the Woodbury Executives' legal counsel in the Michigan Action; and (3) is directing litigation in the Michigan Action. NYSCEF Doc. No. 131 at ¶ 76. Plaintiff further alleges that the Woodbury Executives continue to violate their respective confidentiality and solicitation obligations. *Id.*

Plaintiff alleges that Defendant has taken other precautions to distance itself from allegations of unlawful behavior. *Id.* at ¶¶ 85–88. Specifically, Defendant directed the Woodbury Executives to submit sworn declarations stating that: they "'did not request, advise, or encourage

652801/2024   ACRISURE, LLC vs. WOODRUFF-SAWYER & CO.
Motion No.  006

Page 3 of 17

3 of 17

any of [their respective clients] to terminate their relationship with Acrisure;'" and certain Woodbury Executives deleted materials related to Plaintiff from their devices on the day they resigned. *Id.* at ¶¶ 85–86. Plaintiff alleges, upon information and belief, that the latter is compounded by the fact that Defendant paid for the e-discovery vendor and that, at the time of deletion, Defendant reasonably anticipated litigation. *Id.* at ¶ 86.

*Solicitation of Plaintiff's Employees*

Since the departure of the Woodbury Executives, at least five other Acrisure employees have joined Woodruff. *Id.* at ¶ 77. Plaintiff alleges that the Woodbury Executives solicited these employees on behalf of Defendant. *Id.* These employees submitted job applications to Defendant on March 16, 2024, "mere hours after speaking with certain of the" Woodbury Executives. *Id.* Subsequently, on March 26 and 27, these employees tendered their resignations. *Id.* Plaintiff alleges that the Woodbury Executives and Defendant targeted these employees as former subordinates of the Woodbury Executives. *Id.* at ¶ 80. Plaintiff points to a text message exchange from one these former employees to Kempner in which the employee states, "'I just want you all to know, our conversations we had will go with me to my grave. I acted very surprised and reassured people I had absolutely no clue at all.'" *Id.* at ¶ 78. On March 27, after this exchange, the employee resigned from Plaintiff and subsequently joined Defendant. *Id.* at ¶ 79. All five employees are now employed by Defendant. *Id.* at ¶ 82.

On May 2, 2024, the Honorable Judge Jane M. Beckering of the Western District of Michigan enjoined: (1) Kelly from soliciting Plaintiff's employees; and (2) Rella, Trager, Iovino, Kelly, and Kempner from soliciting Plaintiff's clients. NYSCEF Doc. No. 138 at 3 (Mich. Prelim. Inj. Order).

Plaintiff commenced the present matter by filing the Summons and Complaint on May 31, 2024. NYSCEF Doc. Nos. 1–2 (Summons and Compl.).[8] On August 23, 2024, Plaintiff filed an Amended Complaint. NYSCEF Doc. Nos. 57; 131. Defendant filed the present motion seeking to dismiss the Amended Complaint on October 4, 2024. NYSCEF Doc. No. 129 (Motion Sequence 006). Plaintiff filed their opposition on October 25. NYSCEF Doc. No. 148 (Pl.'s Mem. of Law). Defendant filed its Reply on November 8. NYSCEF Doc. No. 152 (Def.'s Reply Mem. of Law).

## **Legal Analysis**

Defendant seeks to dismiss the Amended Complaint pursuant to CPLR § 3211(a)(7) for failing to state a cause of action. NYSCEF Doc. No. 142 at 14. "A party may move for judgment dismissing one or more causes of action asserted against him on the ground that:… (7) the pleading fails to state a cause of action." CPLR § 3211(a)(7). On a motion to dismiss brought pursuant to CPLR § 3211(a)(7), "pleadings are to be afforded a liberal construction, allegations are taken as true, the plaintiff is afforded every possible inference, and a determination is made only as to whether the facts as alleged fit within any cognizable legal theory." *CSC Holdings, LLC v. Samsung Elecs. Am., Inc.*, 146 N.Y.S.3d 17, 18 (2021) (internal citations omitted). Nevertheless, "[d]ismissal of the complaint is warranted if the [movant] fails to assert facts in support of an

---

[8] Defendant filed a previous motion to dismiss on August 2, 2024; that motion was withdrawn on September 6, 2024. NYSCEF Doc. Nos. 36, 103 (Motion Sequence 001).

**652801/2024 ACRISURE, LLC vs. WOODRUFF-SAWYER & CO.** **Page 4 of 17**
**Motion No. 006**

4 of 17

element of the claim, or if the factual allegations and inferences drawn from them do not allow for an enforceable right of recovery." *Connaughton v. Chipotle Mexican Grill, Inc.*, 75 N.E.3d 1159, 1162 (N.Y. 2017) (internal citations omitted). Courts will grant a motion to dismiss where a movant states a cognizable cause of action but fails to assert a material fact necessary to meet an element of the claim. *See e.g., Arnon Ltd v. Beierwaltes*, 3 N.Y.S.3d 31, 33 (2015).

### a. Tortious Interference with Contractual Relations (Count I)

The Court finds that the Amended Complaint sufficiently pleads tortious interference with contractual relations. To state a claim for tortious interference with contractual relations, the plaintiff must allege "(1) the existence of a valid contract…; (2) defendant's knowledge of that contract; (3) the defendant's intentional procuring of the breach of that contract; and (4) damages." *Burrowes v. Combs*, 808 N.Y.S.2d 50, 53 (1st Dept. 2006). "'[P]ersuasion to breach alone, as by an offer of better terms,' is sufficient to constitute procurement of a breach of contract." *Nostalgic Partners, LLC v. New York Yankees Partn.*, 168 N.Y.S.3d 444, 448 (1st Dept. 2022) (quoting *Guard–Life Corp. v. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183 (1980)).

Defendant does not dispute that Plaintiff has sufficiently pled the existence of Employment Agreements by and between Plaintiff and each of the Woodbury Executives, and that Defendant knew of said agreements. NYSCEF Doc. No. 131 at ¶¶ 91, 92; NYSCEF Doc. No. 142 at 16–17. Defendant does not dispute that Plaintiff has sufficiently alleged damages. NYSCEF Doc. No. 131 at ¶¶ 97–98; NYSCEF Doc. No. 142 at 16–17. Defendant disputes: (1) whether Defendant's alleged conduct was the but for cause of the Woodbury Executives' breach of their respective Employment Agreements; and (2) whether Defendant's interference, if any, was intentional. NYSCEF Doc. No. 142 at 16–17. Defendant also argues that Plaintiff cannot plead tortious interference with a contractual relationship without, in the same instrument, pleading an underlying breach of contract. *Id.* at 17.

#### i. But for Causation

To survive dismissal, a plaintiff alleging tortious interference of contractual relations "must allege that the contract would not have been breached 'but for' defendant's conduct." *Burrowes*, 808 N.Y.S.2d at 53. Defendant argues that the Amended Complaint alleges but for causation in a conclusory fashion and lacks factual support. NYSCEF Doc. No. 142 at 16. Plaintiff rebuts that but for Defendant's conduct directed at the Woodbury Executives, the Woodbury Executives would not have had reason to breach their employment agreements—of which Defendant was on notice. NYSCEF Doc. No. 131 at ¶ 96. Plaintiff alleges that: (1) Defendant had received confidential information from the Woodbury Executives; (2) Defendant offered them "significant signing bonuses"; (3) Defendant offered Kelly a "recruiting bonus"; (4) Defendant agreed to indemnify the Woodbury Executives from liability stemming from breaches of their contracts; and (5) Defendant actively assisted and encouraged unlawful solicitation of Plaintiff's former clients and employees. NYSCEF Doc. No. 148 at 14; *see also* NYSCEF Doc. No. 140 at 3–4, 10–11, 19–20, 26–27, 32–33, 40–41 (Employment Agreements). These allegations go beyond mere conclusory statements and provide a factual basis to infer that, absent Defendant's actions, the Woodbury Executives would not have breached their employment agreements.

652801/2024 ACRISURE, LLC vs. WOODRUFF-SAWYER & CO.
Motion No. 006

Page 5 of 17

Further, the case law upon which Defendant relies is readily distinguishable from the allegations here. For example, in *BGC Partners, Inc.*, the First Department held that a complaint did not sufficiently allege but for causation where the plaintiff alleged, conclusively, that the breaching parties were "offered compensation… designed to induce to breach its contract with [plaintiff] and to disclose trade secrets." 2016 WL 3902277 (N.Y. Cty. Sup. Ct. 2016), *aff'd BGC Partners, Inc. v. Avison Young (Canada) Inc.*, 75 N.Y.S.3d 1 (1st Dept. 2018). Here, the Amended Complaint alleges specific details of the agreement and compensation structure that was the but for cause of the breach including Kelly's recruitment bonus and Defendant's indemnification of the parties in the Michigan Action. NYSCEF Doc. No. 131 at ¶¶ 37, 76.

In *Pursuit Inv. Mgt. LLC*, the complaint flatly alleged that the defendant's actions induced a co-defendant to breach a contract with the plaintiff, but did not explicitly allege that such action was the but for cause. *Pursuit Inv. Mgt. LLC v. Alpha Beta Capital Partners, L.P.*, 8 N.Y.S.3d 283 (1st Dept. 2015). Here, the Amended Complaint indeed alleges that Defendant's incentives to the Woodbury Executives were the "actual and proximate cause" of the breach. NYSCEF Doc. No. 131 at ¶ 94.

Finally, in *Hedgeye Risk Mgt., LLC.,* the complaint "suggest[s] that [the defendant] quit Hedgeye and decided to form his own competing company because he was unhappy with his compensation at Hedgeye, and not because any of the [d]efendants induced him to breach any of the relevant agreements." *Hedgeye Risk Mgt., LLC v. Dale*, 2023 WL 6386845, at *13 (S.D.N.Y. Sept. 29, 2023). By contrast, the Amended Complaint alleges that the Woodbury Executives considered their departure from Acrisure only after Defendant contacted them to start the New York office. NYSCEF Doc. No. 131 at ¶ 29.

### ii.    Intentionality

Defendant argues that Plaintiff has not alleged facts evincing intentional interference by Defendant, but mere involvement. NYSCEF Doc. No. 142 at 16–17. "Intentional interference with contractual relations is, of course, recognized as a tort. But the interference must be intentional, not merely negligent or incidental to some other, lawful, purpose." *Alvord and Swift v. Stewart M. Muller Const. Co., Inc.*, 385 N.E.2d 1238, 1241 (N.Y. 1978) (internal citation omitted). Plaintiff argues that the totality of the facts alleged establishes that Defendant intentionally targeted Plaintiff. NYSCEF Doc. No. 148 at 15. The Amended Complaint alleges, in relevant part, that: (1) Defendant acknowledges the Woodbury Executives' employment agreements and the covenants therein; (2) Defendant incentivized and assisted the Woodbury Executives to defect and solicit customers away from Plaintiff; and (3) Defendant encouraged the Woodbury Executives' actions by indemnifying them against liability. *Id.* The Amended Complaint further identifies text messages from Defendant's employee and correspondence from Plaintiff's former clients indicating that Defendant, at some point, directly contacted them. *See, e.g.,* NYSCEF Doc. No. 131 at ¶¶ 52, 55.

Defendant's actions as alleged in the Amended Complaint are textbook examples of a party intentionally inducing a breach of contract. By way of example, the Restatement (Third) of Torts states, in relevant part:

652801/2024   ACRISURE, LLC vs. WOODRUFF-SAWYER & CO.
Motion No.  006

Page 6 of 17

6 of 17

Employee leaves Firm and signs a valid agreement in which he promises not to compete with Firm during the next year. Rival of Firm is aware of the agreement. Rival approaches Employee and offers to employ him, knowing that this will cause him to breach his agreement with Firm. Employee does so. Rival is subject to liability to Firm in tort under the rules of this Section.

RESTATEMENT (THIRD) OF TORTS: LIAB. FOR ECON. HARM § 17 (2020).

Furthermore, Defendant's argument is premature. Motions to dismiss require this Court to accept the material allegations as true; as such, a motion to dismiss is not the proper avenue for determining whether a defendant's action(s) were not incidental to a lawful purpose. *C.H.A. Design Export (H.K.) Ltd. v. Miller*, 142 N.Y.S.3d 18 (1st Dept. 2021) (whether an action was intentional and not merely incidental to another lawful purpose, "is better addressed after discovery has taken place, rather than at the pleading stage").

### iii. Absence of Breach of Contract Claim

Defendant asserts that Plaintiff cannot maintain a claim for tortious interference with contractual relations without also alleging breach of contract in the same pleading. NYSCEF Doc. No. 142 at 17. Defendant further argues that this Court cannot determine that the Woodbury Executives' Employment Agreements were breached as that determination is reserved for the Michigan court. NYSCEF Doc. No. 152 at 9. In support of this argument, Defendant exclusively cites *Moyal v. Tripost Capital Partners, LLC*., 2019 WL 1517731 (N.Y. Cty. Sup. Ct. 2019). Defendant misinterprets the holding of that case. *See* NYSCEF Doc. 142 at 17 ("dismissing tortious interference with contract cause of action because plaintiff did not have an underlying breach of contract cause of action in the relevant lawsuit."). In *Moyal*, Judge Scarpulla stated, "[i]n this case, Plaintiffs no longer have a breach of contract claim against the Discontinued Defendants," but goes on to state that the tortious interference with contractual relations cause of action in that case failed because Plaintiff failed to sufficiently plead but for causation. *Moyal*, 2019 WL 1517731, at *4.

The *Moyal* court did not hold that the assertion of the underlying cause of action is necessary to maintain aiding and abetting of the same; rather, the *Moyal* court held that a nonviable underlying claim bars any claim to aiding and abetting. 2019 WL 1517731 (N.Y. Cty. Sup. Ct. April 4, 2019) (citing *Kaufman v. Cohen*, 760 N.Y.S.2d 157 (1st Dept. 2003) (holding that an untimely breach of fiduciary duty claim bars a claim for aiding and abetting breach of fiduciary duty)). Accordingly, Defendant has failed to provide this Court with any justification as to the necessity of pleading an underlying breach of contract.

### b. *Tortious Interference with Business Relationships (Count II)*

The Court determines that the Amended Complaint sufficiently pleads tortious interference with business relationships. To state a claim for tortious interference with prospective business or contractual relations, the plaintiff, "must allege that: (a) the plaintiff had business relations with a third party; (b) the defendant interfered with those business relations; (c) the defendant acted with

**652801/2024 ACRISURE, LLC vs. WOODRUFF-SAWYER & CO.**
**Motion No. 006**

**Page 7 of 17**

7 of 17

[* 7]

the sole purpose of harming the plaintiff or by using unlawful means; and (d) there was resulting injury to the business relationship." *Thome v. Alexander & Louisa Calder Found.*, 890 N.Y.S.2d 16, 29 (2009) (*citing to Carvel Corp. v. Noonan*, 818 N.E.2d 1100, 1103–04 (2004); *NBT Bancorp v. Fleet/Norstar Fin. Group*, 87 N.Y.2d 614 (1996); *Hoesten v. Best*, 34 A.D.3d 143, 159 (2006)).

Defendant does not dispute that Plaintiff has sufficiently pled that it had business relations with multiple former clients, who subsequently left for Woodruff. NYSCEF Doc. No. 142 at 17–21. Rather, Defendant argues that: (1) Plaintiff again asserts but for causation in a conclusory and insufficient manner; (2) Plaintiff did not sufficiently allege that Defendant interfered in Plaintiff's business relations; and (3) Defendant's actions towards Plaintiff's former clients, if any, are neither sufficiently malicious nor solely intended to harm Plaintiff. *Id.*

### i. But for Causation

"[I]nterference with business relations applies to those situations where the third party would have entered into or extended a contractual relationship with plaintiff but for the intentional and wrongful acts of the defendant." *WFB Telecomm., Inc. v. NYNEX Corp.*, 590 N.Y.S.2d 460, 461 (1st Dept. 1992). The Court distinguishes the allegations here from those analyzed in the cases upon which Defendant relies. Here, Plaintiff alleges a causal relationship between the Woodbury Executives' defection to Defendant and Plaintiff's subsequent loss of clients to Defendant. *See Algomod Techs. Corp. v. Price*, 886 N.Y.S.2d 120 (1st Dept. 2009) (finding that plaintiff failed to allege a causal connection between allegations of purported wrongful means and demotion leading to loss in contracts). The Amended Complaint alleges that, within the span of a week of the Woodbury Executives' departure, 70 of Plaintiff's former clients elected to sign new broker of record letters appointing the Defendant as their new exclusive broker. NYSCEF Doc. No. 131 at ¶ 45. The Amended Complaint further alleges that the defection of these almost-70 clients came after certain of the Woodbury Executives conducted phone calls or in-person meetings with them or their respective intermediaries. *Id.* at ¶¶ 51–63, 65.

When taken together and as true, these allegations are sufficient to create an inference that, but for Defendant's actions, Plaintiff's clients would not have defected. These allegations go beyond mere conclusory statements and are sufficient to establish but for causation at this stage.

### ii. Interference with Third Parties

Defendant argues that Plaintiff did not allege that Defendant directly communicated with any of Plaintiff's former clients. NYSCEF Doc. No. 142 at 20. "[C]onduct constituting tortious interference with business relations is, by definition, conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship." *Carvel Corp. v. Noonan*, 818 N.E.2d 1100 (N.Y. 2004). Plaintiff relies upon its allegations that: (1) Defendant reached out to an intermediary, who later informed a member of the Woodbury Executives that it had received an e-mail from Defendant; and (2) Defendant had multiple communications with the Woodbury Executives to coach the Woodbury Executives on how to solicit customers. NYSCEF Doc. No. 148 at 17; NYSCEF Doc. No. 131 at ¶¶ 51–75. The communication between Defendant and the insurance intermediary evinces the possibility that Defendant contacted one or more of Plaintiff's former clients directly. Further, Plaintiff alleges that Defendant may have directed conduct toward

652801/2024  ACRISURE, LLC vs. WOODRUFF-SAWYER & CO.
Motion No.  006

Page 8 of 17

8 of 17

the Plaintiff's former clients by way of the Woodbury Executives. *See, e.g., id.* at ¶¶ 66–75. Accordingly, the Amended Complaint sufficiently alleges intentional interference by Defendant.

### iii. Motivation and Methodology

Defendant argues that Plaintiff fails to sufficiently allege that Defendant's conduct was wrongful or motivated solely by malice. Absent a "relation of confidence" between Plaintiff and Defendant, Plaintiff must allege that Defendant's intentional interference was either: (1) through wrongful means; or (2) solely motivated by an intent to harm Plaintiff. *Carvel Corp.*, 818 N.E.2d at 1100; *A.S. Rampell, Inc. v. Hyster Co.*, 144 N.E.2d 371 (N.Y. 1957).

Actions taken with the dual intention of harming Plaintiff while benefitting Defendant are inadequate to plead tortious interference with business relations. *See Thome v. Alexander & Louisa Calder Found.*, 890 N.Y.S.2d 16, 30 (1st Dept. 2009) ("Plaintiff has not alleged any facts suggesting that defendants violated the law or undertook actions with the sole purpose of harming him; indeed, by plaintiff's own theory of the case, defendants acted with the intent of benefitting themselves."). Plaintiff's Amended Complaint alleges that Defendant utilized the acquisition of the Woodbury Executives to open a competing office in Woodbury, New York. NYSCEF Doc. No. 131 at ¶¶ 40–41. It further states that Defendant publicly announced that the acquisition was intended to expand Defendant's footprint on the East Coast. *Id.* at ¶ 38. Accordingly, Defendant was not acting solely maliciously.

Rather, Plaintiff pleads that Defendant's alleged interference was wrongful. New York Courts have applied a more stringent standard to claims for tortious interference with prospective business or contractual relations than claims for tortious interference with a binding contract. *Carvel Corp.*, 818 N.E.2d at 1103–04 ("inducing breach of a binding agreement and interfering with a nonbinding 'economic relation' can both be torts, but that the elements of the two torts are not the same."); *NBT Bancorp Inc.*, 87 N.Y.2d at 621 ("Where there has been no breach of an existing contract, but only interference with prospective contract rights, however, plaintiff must show more culpable conduct on the part of the defendant."). "'Wrongful means' include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion alone although it is knowingly directed at interference with the contract." *Guard-Life Corp.*, 50 N.Y.2d at 191. Moreover, because the claim is based on a non-binding relationship, Plaintiff must show that Defendant's conduct amounted either to a crime or an independent tort. *See Carvel Corp.*, 818 N.E.2d at 1104. The Amended Complaint alleges "'dishonest, unlawful, unfair and improper means'" and that these means arise to independent torts, "including aiding and abetting both breach of fiduciary duty and fraudulent concealment, and unfair competition." NYSCEF Doc. No. 131 at ¶¶ 6, 4–49, 102. Indeed, as discussed *infra*, the Amended Complaint asserts multiple independent torts. *See, generally,* NYSCEF Doc. No. 131 ¶¶ 90–134. Furthermore, Plaintiff alleges that Defendant induced the Woodbury Executives to contravene their respective duties and employment agreements in furtherance of Defendant's goals.

Accordingly, Plaintiff's Amended Complaint has sufficiently alleged: (1) but for causation; (2) Defendant's interference with Plaintiff's clients and employees; and (3) Defendant's wrongful motive and *modus operandi*.

### c. *Unfair Competition (Count III)*

Defendant argues that Plaintiff has not alleged sufficient facts to allege unfair competition. NYSCEF Doc. No. 142 at 21–23. Defendant argues that the Amended Complaint provides only, "conclusory allegations of misappropriation and bad faith." *Id*. at 22. Defendant points to the Michigan Action where Judge Beckering held that the Plaintiff did not successfully show a likelihood of success on the merits in the case between Plaintiff and the Woodbury Executives as to Plaintiff's claim of breach of confidential information and property. NYSCEF Doc. No. 142 at 21–23; NYSCEF Doc. No. 141 at 8–10. Defendant argues that this finding demonstrates that the Woodbury Executives did not provide Defendant with improper or confidential information rising to the level of unfair competition. NYSCEF Doc. No. 142 at 22–23.

Plaintiff argues that the Amended Complaint alleges that Defendant conspired with the Woodbury Executives to misappropriate and use Plaintiff's commercial advantage by soliciting Plaintiff's former clients and employees. NYSCEF Doc. No. 148 at 20. Plaintiff alleges that it invested considerable time and money to "develop its customer relationships and talent and to protect its proprietary and confidential information." *Id.* (citing NYSCEF Doc. No. 131 at ¶¶ 24–26, 77).

"There is no complete list of the activities which constitute unfair competition. The general principle, however, evolved from all of the cases is that commercial unfairness will be restrained when it appears that there has been a misappropriation, for the commercial advantage of one person of a benefit or property right belonging to another." *Dior v. Milton*, 155 N.Y.S.2d 443, 451 (N.Y. Cty. Sup. Ct. 1956), *aff'd,* 156 N.Y.S.2d 996 (1st Dept. 1956). "To state a claim for unfair competition, plaintiff must allege 'bad faith misappropriation of a commercial advantage or property which belonged exclusively to it,' as well as special damages and a confidential relationship." *Creative Circle, LLC v. Norelle-Bortone*, 2019 WL 9469595, at *6 (N.Y. Cty. Sup. Ct. 2019); *see also LoPresti v. Massachusetts Mut. Life Ins. Co.*, 820 N.Y.S.2d 275, 277 (2d Dept. 2006) ("Finally, the plaintiff's cause of action alleging unfair competition was properly dismissed insofar as asserted against the respondents because the complaint failed to allege the bad faith misappropriation of a commercial advantage which belonged exclusively to him."). "[T]he primary concern in unfair competition is the protection of a business from another's misappropriation of the business' 'organization [or its] expenditure of labor, skill, and money.'" *Ruder & Finn Inc. v. Seaboard Sur. Co.*, 422 N.E.2d 518 (N.Y. 1981) (quoting *Intl. News Serv. v. Associated Press*, 248 U.S. 215 (1918)).

The Amended Complaint alleges, in relevant part, that soliciting and maintaining customers, accounts, and employees is highly competitive and that significant investments of time and resources are required to restore any lost customers. NYSCEF Doc. No. 131 at ¶ 24. The Woodbury Executives had unique access to Plaintiff's confidential and competitive materials that could benefit Defendant. *Id.* Significant investments of time and money are necessary to recruit and train teams of insurance brokerage professionals, such as the Woodbury Executives and the other employees solicited by Defendant. *Id.* at ¶ 25. Further, Plaintiff "invests in innovative technology, training of its workforce, strong referral networks and business contacts that are critical to developing and retaining its insurance customer relationships." *Id.* at ¶ 26. When taken

652801/2024  ACRISURE, LLC vs. WOODRUFF-SAWYER & CO.
Motion No. 006

Page 10 of 17

as true, these allegations establish that Plaintiff invested significant time and money in acquiring and maintaining clientele as well as hiring and training their workforce. Necessarily, then, Defendant would not be required to expend as much time and money into these ventures by poaching the Woodbury Executives and utilizing their preexisting relationship with clients to solicit Plaintiff's former clients. Accordingly, Defendant necessarily leveraged Plaintiff's resources to gain an unfair advantage as a competitor in the same industry.

Further, Judge Beckering's finding in the Michigan action is not dispositive in the present matter and, particularly, at the motion to dismiss stage under to New York law. Judge Beckering's findings are confined to Plaintiff's motion seeking injunctive relief. NYSCEF Doc. No. 141 at 8. Judge Beckering stated that Plaintiff has a possibility of success, but that, at the time of the preliminary injunction hearing, Plaintiff could not establish a likelihood of success. *Id.* at 9–10. Accordingly, Judge Beckering's finding does not establish a lack of merit, but a failure in establishing that Plaintiff was more likely than not to succeed at the time of the preliminary injunction hearing.

Any argument made by Defendant that any misappropriation was not in bad faith is similarly unavailing. "A cause of action based on unfair competition may be predicated on the bad faith misappropriation of proprietary information or trade secrets." *Valkyrie AI LLC v. PriceWaterhouseCoopers LLP*, 221 N.Y.S.3d 101, 102 (1st Dept. 2024). Further, it can be reasonably inferred from the Amended Complaint that members of the Woodbury Executives had access to proprietary business and employment information—or trade secrets—as well as a likelihood that Plaintiff cultivates the Woodbury Executives' business relations. In *Macy's Inc. v. Martha Stewart Living Omnimedia, Inc.*, the Appellate Division held that a defendant, J.C. Penney Corporation Inc., acted in bad faith when the defendant had: (1) co-defendant's designers develop products for a competitor while under an exclusive agreement with Plaintiff; and (2) utilized Plaintiff's confidential and competitive information which it had obtained from its co-defendant. 6 N.Y.S.3d 7, 13–14 (1st Dept. 2015). Similarly, Plaintiff alleges that members of the Woodbury Executives contacted former clients on behalf of Defendant while still employed by Plaintiff. NYSCEF Doc. No. 131 at ¶¶ 44, 51–65. Plaintiff alleges that Defendant took advantage of Plaintiff's relationships with former clients and employees to gain competitive information in soliciting clients and hiring Plaintiff's former employees as a result of knowledge, information, or expertise of the Woodbury Executives. *Id.* at 51–65, 77–82. Additionally, as discussed *infra*, the Amended Complaint alleges that Defendant induced the Woodbury Executives to abuse their fiduciary or confidential relationship to the benefit of Defendant. *Valkyrie AI LLC,* 221 N.Y.S.3d at 102 ("Bad faith can be shown through acts of 'fraud, deception, or an abuse of a fiduciary or confidential relationship.'").

### d. *Aiding and Abetting Fraudulent Concealment (Count IV)*

Defendant argues that Plaintiff's aiding and abetting fraudulent concealment claim fails because: (1) Plaintiff did not assert an underlying fraud claim against the Woodbury Executives; (2) Plaintiff did not meet the heightened pleading standard under CPLR § 3016(b); (3) Plaintiff did not plead that the Woodbury Executives had a duty to disclose the facts alleged in the

652801/2024 ACRISURE, LLC vs. WOODRUFF-SAWYER & CO.
Motion No. 006

Page 11 of 17

11 of 17

complaint; and (4) Plaintiff did not plead substantial assistance by Defendant. NYSCEF Doc. No. 142 at 23.

> The elements of a claim for fraudulent concealment are: (1) an omission of a material fact; (2) intent to defraud; (3) duty to disclose, (4) reasonable reliance on the omission, and (5) damages suffered. The elements of fraudulent concealment are the same as the elements required for fraudulent misrepresentation with one addition — it must be shown that "the defendant had a duty to disclose material information and that it failed to do so."

*Katehis v. Sovereign Assocs., Inc.*, 999 N.Y.S.2d 797, 797 (N.Y. Cty. Sup. Ct. 2014) (citing *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173 (2011); *P.T. Bank Cent. Asia v. ABN AMRO Bank N.V.*, 754 N.Y.S.2d 245 (1st Dept. 2003)). "'Substantial assistance' must also be pleaded in addition to the other elements of fraudulent concealment to set forth a cause of action for aiding and abetting fraudulent concealment." *Colazzo v. Ponte*, 2019 NY Slip Op 31131(U) (N.Y. Cty. Sup. Ct. 2019) (citing *William Doyle Galleries, Inc. v. Stettner*, 91 N.Y.S.3d 13 (1st Dept. 2018)).

### i. Underlying Fraudulent Concealment

Defendant argues that Plaintiff's cause of action for aiding and abetting fraudulent concealment must fail as Plaintiff did not assert a cause of action for fraud against the Woodbury Executives. NYSCEF Doc. No. 142 at 24 (citing *Cohen Ritz Retail Co., LLC v. Manhattan ASC, LLC*, 2015 NY Slip Op 30652(U) (N.Y. Cty. Sup. Ct. 2015) ("The aiding and abetting claim must be dismissed given that the underlying fraud claim is not legally viable and has been dismissed.")). As discussed *supra*, Plaintiff must sufficiently plead the underlying fraud to survive a motion to dismiss. *Stanfield Offshore Leveraged Assets, Ltd. v. Metro. Life Ins. Co.*, 883 N.Y.S.2d 486 (1st Dept. 2009). Plaintiff need not assert a cause of action for fraudulent concealment, but must sufficiently plead the elements as if a cause of action were brought. *See, e.g., Nabatkhorian v. Nabatkhorian*, 7 N.Y.S.3d 479 (2nd Dept. 2015) (analyzing the elements of fraud in a complaint, not the existence of an underlying cause of action).

The Amended Complaint alleges that the Woodbury Executives owed a fiduciary duty to Plaintiff as high-ranking employees of Plaintiff and had a duty to disclose Defendant's scheme to Plaintiff, but did not do so. NYSCEF Doc. No. 131 at ¶¶ 112–113; *see Wallack Freight Lines, Inc. v. Next Day Express, Inc.*, 711 N.Y.S.2d 891 (2d Dept. 2000) ("It is well settled that an employee owes a duty of good faith and loyalty to an employer in the performance of the employee's duties."). Further, the Amended Complaint alleges that the Woodbury Executives breached their duty to Plaintiff by utilizing Plaintiff's time and resources in soliciting Plaintiff's former clients and employees. NYSCEF Doc. No. 131 at ¶ 114; *see Ashland Mgt. Inc. v. Altair Investments NA, LLC*, 869 N.Y.S.2d 465 (1st Dept. 2008), *aff'd as modified*, 925 N.E.2d 581 (N.Y. 2010) ("Furthermore, while '[a]n employee may create a competing business prior to leaving his employer without breaching any fiduciary duty unless he makes improper use of the employer's time, facilities or proprietary secrets in doing so….'"). The Amended Complaint also alleges that: (1) had Plaintiff discovered Defendant and the Woodbury Executives' actions in advance, Plaintiff would have reconsidered their employment and access; and (2) the Woodbury Executives, as directed by Defendant, took active steps to conceal their actions such that Plaintiff could not have

**652801/2024 ACRISURE, LLC vs. WOODRUFF-SAWYER & CO.** **Page 12 of 17**
**Motion No. 006**

12 of 17

[* 12]

discovered this scheme through the exercise of ordinary intelligence. NYSCEF Doc. No. 131 at ¶ 113; *Stuart Silver Associates, Inc. v. Baco Dev. Corp.*, 665 N.Y.S.2d 415, 417 (1st Dept. 1997) ("Where a party has the means to discover the true nature of the transaction by the exercise of ordinary intelligence, and fails to make use of those means, he cannot claim justifiable reliance on defendant's misrepresentations."). Finally, the Amended Complaint alleges that Plaintiff has suffered monetary damage of, at least, one million dollars as well as harm to its general business, relationships, and goodwill. NYSCEF Doc. No. 131 at ¶ 121.

Accordingly, the Amended Complaint establishes the elements necessary to plead the underlying fraudulent concealment. The fact that Plaintiff did not assert the fraudulent concealment cause of action here is unavailing.

### ii. Heightened Pleading Standard (CPLR § 3016)

"Where a cause of action or defense is based upon misrepresentation, fraud, mistake, willful default, breach of trust or undue influence, the circumstances constituting the wrong shall be stated in detail." CPLR § 3016(b). "Although there is certainly no requirement of 'unassailable proof' at the pleading stage, the complaint must 'allege the basic facts to establish the elements of the cause of action.'" *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 910 N.E.2d 976, 979 (N.Y. 2009) (quoting *Pludeman v. N. Leasing Sys., Inc.*, 890 N.E.2d 184 (N.Y. 2008)). Defendant argues that Plaintiff does not identify a single misrepresentation made by any of the Woodbury Executives and that Plaintiff "improperly lumps" the non-parties together to enhance Plaintiff's "overly dramatic narrative." NYSCEF Doc. No. 142 at 19–20. Plaintiff rebuts that the Amended Complaint is rife with specific examples and direct quotes from both Defendant and the Woodbury Executives. NYSCEF Doc. No. 148 at 22–23.

"Our Court of Appeals has interpreted this provision as requiring 'only that the misconduct complained of be set forth in sufficient detail to clearly inform a defendant with respect to the incidents complained of and is not to be interpreted so strictly as to prevent an otherwise valid cause of action in situations where it may be "impossible to state in detail the circumstances constituting a fraud."'" *Fid. and Deposit Co. of Maryland v. Arthur Andersen & Co.*, 515 N.Y.S.2d 791, 793 (1st Dept. 1987) (quoting *Lanzi v. Brooks*, 373 N.E.2d 278 (N.Y. 1977)). The Amended Complaint alleges extensive details that specifically establish the alleged conduct and wrongdoing of both the Woodbury Executives and Defendant. *See, e.g.,* NYSCEF Doc. No. 131 at ¶¶ 29–88. The Amended Complaint includes excerpts of text messages and e-mails by and between the Woodbury Executives, Defendant's employees, and Plaintiff's former clients. *See, e.g., id.* at ¶¶ 52–55, 58–61, 69–72. The Amended Complaint articulates: (1) what the alleged scheme was; (2) who participated in the alleged scheme; (3) when the alleged scheme occurred; (4) why the parties carried out the alleged scheme; and (5) how the alleged scheme was perpetrated.

As to group pleading, "[b]y pleading the fraud claim against all defendants collectively, without any specification of the conduct charged to particular defendants, plaintiffs deprive defendants of the notice regarding 'the material elements of each cause of action' to which defendants are entitled under CPLR 3013." *Barlow v. Skroupa*, 76 Misc. 3d 587, 591 (N.Y. Cty. Sup. Ct. 2022). "Indeed, '[a] fraud claim asserted <u>against multiple defendants</u> must include specific and separate allegations for <u>each defendant</u>.'" NYSCEF Doc. No. 142 at 25 (quoting

652801/2024  ACRISURE, LLC vs. WOODRUFF-SAWYER & CO.
Motion No. 006

Page 13 of 17

13 of 17

*Cohen Ritz Retail Co., LLC*, 2015 NY Slip Op 30652(U)) (emphasis added). Claims of impermissible group pleading necessarily require allegations made against multiple parties to a case, then. The caselaw cited by Defendant to support its argument regarding impermissible group pleadings all feature multiple defendants. *See Cohen Ritz Retail Co., LLC*, 2015 NY Slip Op 30652(U) (dismissing cause of action for impermissible group pleading when Plaintiff failed to distinguish the respective actions of three defendants); *Cedar Capital Mgt. Group Inc. v. Lillie*, 193 N.Y.S.3d 700 (N.Y. Cty. Sup. Ct. 2023) (dismissing complaint for impermissible group pleading when the plaintiff failed to distinguish the respective fraudulent actions of multiple defendants). Here, there is a single defendant and there is no group.

As to Defendant's contention regarding Plaintiff's failure to allege any specific misrepresentations made by the Woodbury Executives, that argument is similarly unconvincing. "[T]he plaintiff must prove a misrepresentation <u>or a material omission of fact</u> which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or <u>material omission</u>, and injury." *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996) (emphasis added). Plaintiff need not make an allegation as to any misrepresentations made by Defendant or the Woodbury Executives, as Plaintiff alleges that the Woodbury Executives omitted disclosure of their respective ties to the Defendant while maintaining a duty to disclose.

### iii.  Duty to Disclose

Defendant argues that the Woodbury Executives did not have a duty to disclose their respective ongoing relationships with Defendant as an employee does not have "an obligation to advise the current employer when negotiating employment terms with a potential new employer." NYSCEF Doc. No. 142 at 25–26. However, Plaintiff does not allege that the Woodbury Executives had a duty to disclose that they were conducting ongoing employment negotiations, but that the Woodbury Executives had a duty to disclose that they were contacting and soliciting Plaintiff's clients and employees on behalf of or in connection with Defendant. NYSCEF Doc. No. 148 at 27–28.

"Moreover, fundamental to the principal-agent relationship 'is the proposition that an [agent] is to be loyal to his [principal] and is "prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties."'" *Sokoloff v. Harriman Estates Dev. Corp.*, 754 N.E.2d 184 (N.Y. 2001) (quoting *W. Elec. Co. v. Brenner*, 360 N.E.2d 1091 (N.Y. 1977) (quoting *Lamdin v. Broadway Surface Advert. Corp.*, 5 N.E.2d 66 (N.Y. 1936))). "A corporate officer… owes a fiduciary duty to his employer, and is held to a standard 'stricter than the morals of the marketplace.'" *Aon Risk Services v. Cusack*, 946 N.Y.S.2d 65 (N.Y. Cty. Sup. Ct. 2011) (quoting *In re Bernard L. Madoff Inv. Securities LLC*, 458 B.R. 87 (Bankr. S.D.N.Y. 2011)). "Thus, corporate officers owe a fiduciary duty to their employer 'not to (1) actively exploit their positions within the corporation for their own personal benefit, or (2) hinder the ability of a corporation to continue the business for which it was developed.'" *Id.* (quoting *Alpha Sch. Bus Co., Inc. v. Wagner*, 910 N.E.2d 1134 (Ill. App. 1st Dist. 2009)). "Where an agent has a conflict of interest with his principal, and fails to disclose the conflict, the agent is liable for a breach of fiduciary duty." *Id.* "It would be a breach of fiduciary duty if an agent of a corporation secretly established

a competing entity so as to divert opportunities away from his principal." *Am. Baptist Churches of Metro. New York v. Galloway*, 710 N.Y.S.2d 12 (1st Dept. 2000).

Here, the Amended Complaint alleges that members of the Woodbury Executives utilized Plaintiff's time and client lists to solicit Plaintiff's clients and employees. *See, e.g.,* NYSCEF Doc. No. 131 at ¶¶ 52–65. Plaintiff alleges that the Woodbury Executives acted as faithless employees and breached their fiduciary duty by utilizing Plaintiff's time, facilities, and clients to assist Defendant without informing Plaintiff. Accordingly, to maintain their respective fiduciary and loyalty duties, the Woodbury Executives were required to disclose their potential conflict of interest, not that they were seeking alternate employment.

### iv. Substantial Assistance by Defendant

"Substantial assistance exists 'where (1) a defendant affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed, and (2) the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated.'" *Stanfield Offshore Leveraged Assets, Ltd.,* 883 N.Y.S.2d at 489 (quoting *UniCredito Italiano SPA v. JPMorgan Chase Bank*, 288 F. Supp. 2d 485 (S.D.N.Y. 2003)). The Amended Complaint alleges that: (1) Defendant contacted the Woodbury Executives to induce their departure from Plaintiff; (2) Defendant coached the Woodbury Executives in their attempt to solicit Plaintiff's clients and employees; and (3) Defendant has provided legal assistance and input throughout the scheme and presently during the pendency of the Michigan Action. *See, e.g.,* NYSCEF Doc. No. 131 at ¶¶ 29–40, 43–65. When taken as true, the allegations sufficiently plead Defendant's substantial assistance in the improper actions of the Woodbury Executives.

### e. Aiding and Abetting Breach of Fiduciary Duty (Count V)

Defendant argues that the cause of action for aiding and abetting should be dismissed because: (1) Plaintiff does not assert an underlying cause of action for breach of fiduciary duty; (2) the Woodbury Executives did not owe a fiduciary duty to Plaintiff; and (3) Plaintiff does not allege that Defendant substantially assisted with any breach of fiduciary duties. NYSCEF Doc. No. 142 at 26–28.

"A claim for aiding and abetting a breach of fiduciary duty requires: (1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the breach." *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 169 (1st Dept. 2003). "A person knowingly participates in a breach of fiduciary duty only when he or she provides 'substantial assistance' to the primary violator." *Id.* "The elements of a cause of action for breach of fiduciary duty are: (1) the existence of a fiduciary duty; (2) breach of that duty; (3) and a showing that the breach was a substantial factor in causing an identifiable loss." *A&F Hamilton Heights Cluster, Inc. v. Urb. Green Mgmt., Inc.*, 2015 N.Y. Misc. LEXIS 12088, at *11 (N.Y. Cty. Sup. Ct. 2015) (citing *People v. Grasso*, 858 N.Y.S.2d 23 (1st Dept. 2008)).

Defendant, again, argues that Plaintiff's cause of action must fail because, based upon *Moyal v. Tripost Capital Partners, LLC*, a party must bring a breach of fiduciary duty cause of

652801/2024 ACRISURE, LLC vs. WOODRUFF-SAWYER & CO.
Motion No. 006

Page 15 of 17

15 of 17

[* 15]

action whenever they seek to assert aiding and abetting breach of fiduciary duty. As discussed *supra*, the analysis is not whether the Amended Complaint includes a cause of action for breach of fiduciary duty, but that such a claim is viable, and the elements have been sufficiently pled. *See also Shutvet v. Massa*, 2023 WL 1961161 (N.Y. Cty. Sup. Ct. 2023) (dismissing aiding and abetting breach of fiduciary duty claim where underlying breach of fiduciary duty claim was nonviable pursuant to *res judicata*). Here, Plaintiff has adequately alleged that: (1) the Woodbury Executives had a fiduciary duty to Plaintiff; (2) the Woodbury Executives breached said duty by utilizing Plaintiff's resources, without their knowledge, to assist Defendant; and (3) as a result of the Woodbury Executives and Defendant's actions, Plaintiff suffered damages of approximately one million dollars and as well as harm to its general business, its relationships, and goodwill.

Accordingly, Plaintiff has sufficiently alleged the elements of an underlying breach of fiduciary duty and substantial assistance by Defendant to the Woodbury Executives in carrying out the alleged scheme.

### f. Punitive Damages

Defendant argues, in the alternative, that this Court should strike Plaintiff's request for punitive damages as the Amended Complaint does not allege facts sufficient to meet the high bar for punitive damages. NYSCEF Doc. No. 142 at 28–29. Plaintiff rebuts that Defendant's request is premature. NYSCEF Doc. No. 148 at 29. "Punitive or exemplary damages have been allowed in cases where the wrong complained of is morally culpable, or is actuated by evil and reprehensible motives, not only to punish the defendant but to deter him, as well as others who might otherwise be so prompted, from indulging in similar conduct in the future." *Walker v. Sheldon*, 179 N.E.2d 497, 498 (N.Y. 1961).

"[A] private party seeking to recover punitive damages must not only demonstrate egregious tortious conduct by which he or she was aggrieved, but also that such conduct was part of a pattern of similar conduct directed at the public generally." *Rocanova v. Eq. Life Assur. Soc. of U.S.*, 634 N.E.2d 940, 943–44 (N.Y. 1994). However, "[t]he requirement for an award of punitive damages, that a defendant's conduct must be directed at the public generally, applies only in breach of contract cases, not in tort cases for breach of fiduciary duty." *Sherry Associates v. Sherry-Netherland, Inc.*, 708 N.Y.S.2d 105 (1st Dept. 2000) (internal citations omitted), *but see Barbagallo v. Marcum LLP*, 820 F.Supp.429, 448 (E.D.N.Y. 2011) (dismissing claims for punitive damages where they did not "implicate[ ] behavior directed at the public in general"). "To sustain a claim for punitive damages in tort, one of the following must be shown: intentional or deliberate wrongdoing, aggravating or outrageous circumstances, a fraudulent or evil motive, or a conscious act that willfully and wantonly disregards the rights of another." *Don Buchwald & Associates, Inc. v. Rich*, 281 A.D.2d 329, 330 (1st Dept. 2001).

Here, the Amended Complaint pleads that Defendant sought to open a new branch of Defendant's firm in New York by hiring a group of insurance brokers with preexisting clients and expertise derived from Plaintiff. *See, e.g.,* NYSCEF Doc. No. 131 at ¶¶ 29, 40–42. Plaintiff alleges that Defendant induced the Woodbury Executives to contravene their contractual and fiduciary duties and loyalty to Plaintiff for the benefit of Defendant and utilized Plaintiff's resources to do so. *See, e.g., id.* at ¶ 34. At a minimum, the Amended Complaint pleads a

**652801/2024 ACRISURE, LLC vs. WOODRUFF-SAWYER & CO.**
**Motion No. 006**

**Page 16 of 17**

"conscious act that willfully" disregards the rights of Plaintiff. *See Don Buchwald*, 281 A.D.2d at 330 (sustained claim for punitive damages where "defendants secretly formed a competitor agency and stole a number of their former employer's clients").

## **Conclusion**

Based on the foregoing, the Court finds that the Amended Complaint sufficiently alleges: (1) tortious interference with contractual relations (Count I); (2) tortious interference with business relations (Count II); (3) unfair competition (Count III); (4) aiding and abetting fraudulent concealment (Count IV); and (5) aiding and abetting breach of fiduciary duty (Count V). Furthermore, Plaintiff's request for punitive damages is appropriate at this stage.

As such, it is hereby

**ORDERED** that Defendant's Motion to Dismiss pursuant to CPLR § 3211(a)(7) is DENIED in its entirety.

| | |
|---|---|
| **December 30, 2024** | *A. R. Patel* |
| **DATE** | **ANAR RATHOD PATEL, A.J.S.C.** |

CHECK ONE:　　　　　☐ CASE DISPOSED　　　　☒ NON-FINAL DISPOSITION

　　　　　　　　　　☐ GRANTED　☒ DENIED　☐ GRANTED IN PART　☐ OTHER

APPLICATION:　　　　☐ SETTLE ORDER　　　　☐ SUBMIT ORDER

CHECK IF APPROPRIATE:　☐ INCLUDES TRANSFER/REASSIGN　☐ FIDUCIARY APPOINTMENT　☐ REFERENCE

**652801/2024  ACRISURE, LLC vs. WOODRUFF-SAWYER & CO.**                    **Page 17 of 17**
**Motion No.  006**

17 of 17